State *v.* Johnson.

———•◆•———

STATE *vs.* JOHN R. JOHNSON.

By the statute of 1846 all murder perpetrated by "any kind of willful, deliberate and premeditated killing," is made murder in the first degree. Held that, under this statute, a deliberate intent to take life must be proved; and that a state of intoxication, or any other fact tending to prove that the prisoner was incapable of deliberation, might be shown in his defence, and might be considered by the jury.

These facts are admissible not as excusing the act, nor in mitigation of punishment, but as tending to show that a less offense than murder in the first degree was committed.

The counsel for the prisoner submitted to the court for its charge to the jury sundry propositions as to the degree of insanity that would absolve from crim-

inal responsibility, the length of time it needed to exist, and the effect of prior insanity. The court charged that, to be criminally responsible, a man must have reason enough to be able to judge of the character and consequences of the act committed; that he must not be overcome by an irresistible impulse arising from disease; that the question of sanity was one of fact, and that the jury must be satisfied beyond a reasonable doubt that the prisoner was of sound mind; and that every person was presumed to be of sound mind, but that if insanity was shown a short time before the act the evidence should show sanity at the time, or the jury should acquit. Held, on motion of the prisoner for a new trial, that the charge was correct and all that the prisoner was entitled to.

INDICTMENT for murder in the first degree; brought to the Superior Court in New Haven County, and tried, on the plea of not guilty, before *Foster* and *Granger, Js.*

The murder charged was that of a woman named Johanna Hess, at Meriden, in New Haven County, on the 8th day of July, 1872. By statute (Gen. Statutes, tit. 12, sec. 6.), "all murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in perpetrating, or attempting to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder in the first degree; and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty, ascertain in their verdict whether it be murder in the first degree or second degree." Another section of the statute makes murder in the first degree punishable by death, and in the second degree by imprisonment in the state prison for life.

Upon the trial the attorney for the state having offered evidence to prove, and claiming to have proved, that the murder was willful, deliberate and premeditated, and therefore murder in the first degree, the counsel for the prisoner offered evidence to prove that he was insane at the time he committed the act, and that he had been insane on previous occasions, and had a disease called dipsomania. He also offered evidence to prove, and claimed to have proved, that the prisoner was intoxicated at the time, and was also suffering from a severe injury which had effected his nervous organization, and

which rendered him more easily affected by intoxicating liquor.

After the evidence was in, the counsel for the prisoner filed a written request that the court would give the jury the following instructions in writing:

1st. That if the evidence shows that intoxicating liquor on previous occasions had rendered the prisoner insane, or had caused an habitual madness or fixed frenzy, and that if at the time he was laboring under a temporary insanity caused by excessive drinking, in combination with an infirm state of mind, or a previous wound or illness, which rendered ardent spirits fatal to his intellect, to a degree unusual in other men, the jury should wholly acquit the prisoner.

2d. That if upon the whole evidence the jury believe that the prisoner at the time of committing the act was under the influence of a diseased mind, and was unconscious that he was committing a crime, the jury should acquit him.

3d. That if the prisoner was laboring under some controlling decease, which was an active power within him which he could not resist, then he was not responsible.

4th. That if the jury believe that from any cause, either from personal injuries or the use of ardent spirits, the prisoner's mind was impaired, and at the time of committing the act was, by reason of such cause, unconscious that he was committing a crime, he is not guilty of any offense whatever.

5th. That if the jury find that the prisoner was greatly excited or affected by the use of liquors, and which produced a state of mind unfavorable to deliberation and premeditation, although not such as to render the party entirely incapable of forming a deliberate purpose, he cannot be convicted of any higher crime than that of manslaughter.

6th. That the law does not require that the insanity which absolves from crime should exist for any definite period, or for any particular length of time; but only that it should exist at the moment when the act charged was committed.

7th. That the proof of prior insanity, at any time, imposes upon the state the burden of proving the crime to have

been perpetrated during a lucid interval; and that the proof of prior insanity defeats the legal presumption of sanity, and creates a legal presumption of continued lunacy, which, like the former, must be overthrown by proof.

8th. That if the jury have any doubt as to the case on the question of the sanity of the prisoner at the time of the commission of the act, he should be acquitted.

9th. That if intoxicated at the time of committing the act he is guilty of no higher crime than that of manslaughter.

10th. That in order to convict of murder in the first degree the jury must find that the accused killed the deceased with premeditation, and while in the possession of a sound mind and of his reasoning faculties, and that if the jury have any doubt on this point, or on any point in the case, they are bound to give the prisoner the benefit of that doubt.

The court declined to give any of the instructions so requested, but in lieu thereof charged the jury in writing as follows:

"To be a subject of punishment, an individual must be a moral agent; must have mind and capacity, must have reason and understanding, enough to enable him to judge of the nature, character and consequences of the act charged against him, that the act is wrong and criminal, and that the commission of it will properly and justly expose him to penalties. He must not be overcome by an irresistible impulse arising from disease. The law can give no full and precise definition of sanity or of insanity; each is a question of fact, and the jury should be satisfied beyond a reasonable doubt, before convicting a man of crime, that he is of sound mind—a sane man; if insane, he should be acquitted. Every person of mature years is presumed to be competent to commit crime, and to be of sound mind. If a person charged with crime be shown to have been insane a short time before the commission of the act, the evidence should show sanity at the time, or the jury should acquit.

"Drunkenness does not excuse a party from the conse-

quences of a criminal act ; one crime cannot justify another. A man committing a criminal act, though intoxicated at the time, is a legal and proper subject of punishment.

"If a man, by long continued habits of intoxication, has brought on insanity, or so impaired and enfeebled his mind as to be utterly imbecile, he is no longer responsible for crime.

"If upon the whole evidence the jury entertain a reasonable doubt as to the prisoner's sufficient soundness of mind to be responsible for his acts, it will be their duty to give him the. benefit of the doubt, and so render a verdict of acquittal."

The court further charged the jury orally, as follows :

"Murder in the first degree is defined by our statute as the killing of any person by poison, by lying in wait, or by any other kind of willful, deliberate, premeditated killing, or when perpetrating the crimes of robbery, rape, burglary of arson. This indictment does not charge the commission or this crime, either by lying in wait, by poison, or when committing either of the other crimes named in the statute. The question will be for you, under this indictment, to decide whether the accused committed the crime willfully, deliberately and with premeditation. On this indictment the jury may bring in a verdict of guilty of murder in the first degree, or second degree, or manslaughter, or not guilty."

The jury returned a verdict of guilty of murder in the first degree, and the prisoner moved for a new trial, for error in the refusal of the court to charge as requested, and in the charge given.

There was also a motion in error on the ground of the insufficiency of the indictment, but as the decision of the case was wholly upon the motion for a new trial, that part of the case is not stated.

*Hicks*, in support of the motion.

1. The court erred in refusing to charge the jury as requested by the prisoner's counsel upon the point of insanity. 1 Wharton & Stille's Med. Jur., §§ 117, 159, and note; 1

Wat. Archb. Cr. Pr. & Pl., 39, 919. The points were of great importance to the prisoner, and it was the duty of the court either to charge according to the requests, or to state the law as it really is on the points, and so fully that the jury would be in no danger of misapprehending it in its application to the case. *Morris* v. *Platt*, 32 Conn., 82; *Goddard* v. *Perkins*, 9 Gray, 412; Hilliard on New Trials, 380.

2. The court erred in not charging as requested upon the point of intoxication. The charge given may be good law in itself, but did not meet the requirements of the case, and was such that the jury in the circumstances might easily draw improper conclusions from it. *Morris* v. *Platt*, 32 Conn., 82. That the jury have a right to consider the question of intoxication in cases of persons charged with murder in the first degree, is a doctrine sustained by innumerable authorities, by all writers upon medical jurisprudence, and by that sense of justice which holds a human being fully responsible only for those acts which he intended to commit. Ray's Med. Jur., (5th ed.) 560, 563, 565, 570, 571; Taylor's Med. Jur., (8th ed.) 709; 1 Wharton & Stille's Med. Jur., 200, 214, 215; 18 Am. Journal of Insanity, 163; 19 id., 448; 23 id., 549; 10 Brit. & For. Med. Review, 172; 1 Bish. Cr. Law, §§ 409, 410; Broom's Com., 187; 1 Ben. & Heard Lead. Crim. Cas., 144; *Kilpatrick* v. *The Commonwealth*, 31 Penn. S. R., 198, 203; *Keenan* v. *The Commonwealth*, 44 id., 55; *Pirtle* v. *The State*, 9 Humph., 663; *Haile* v. *The State*, 11 id., 154; *Roberts* v. *The People*, 19 Mich., 401; *Pigman* v. *The State*, 14 Ohio, 555; *The People* v. *Harris*, 29 Cal., 678; *Bailey* v. *The State*, 26 Ind., 422; *Curry* v. *The Commonwealth*, 2 Bush, 67; *Blimm* v. *The Commonwealth*, 7 id., 320; *State* v. *Schingen*, 20 Wis., 74; *Smith* v. *The Commonwealth*, 1 Duvall, 224; *Golliher* v. *The Commonwealth*, 2 id., 163; *U. States* v. *Roudenbush*, 1 Baldw., 514; *State* v. *Garvey*, 11 Minn., 154; *Regina* v. *Cruse*, 8 Car. & P., 541; *Regina* v. *Monkhouse*, 4 Cox C. C., 55.

*G. A. Fay*, contra, contended that the charge of the court was favorable to the prisoner upon the question of insanity, and

that it was correct as to the effect of intoxication; citing upon the latter point, 1 Waterman's Archb. Crim. Pr. & Pl., 31, and note; 1 Bishop Crim. Law, § 488; 3 Greenl. Ev., §§ 6, 148; Elwell's Crim. Jur., 413.

CARPENTER, J.   There being a difference in opinion on the questions arising upon the motion in error, none of those questions are now decided, but we confine our attention to the motion for a new trial.

We think the charge of the court upon the subject of insanity was unexceptionable.   It fully complied with the requests of the prisoner's counsel, so far as those requests were according to law.   The language of the court differs, and very properly differs, from the language of the requests; but the law of the charge is correct, and all that the prisoner was entitled to.

We are also of the opinion that the court was not bound to charge as requested upon the subject of intoxication.   If the prisoner was in fact intoxicated at the time of the homicide, that does not, as matter of law, reduce the offense to manslaughter; much less does it justify the prisoner.   Nor does it in point of law reduce it to murder in the second degree.   There was no error therefore in refusing to charge according to those requests.

The court charged the jury that "drunkenness does not excuse a party from the consequences of a criminal act; one crime cannot justify another.   A man committing a criminal act, though intoxicated at the time, is a legal and proper subject of punishment."

This too, as a general proposition, is correct.   If that was the only question involved in the case, it would be entirely free from difficulty.   But the real question is, whether drunkenness, as a *fact*, may be considered by the jury as evidence tending to disprove an essential *fact* in the case, a deliberate intention to take life.

We have entertained some doubts whether this question was made in the court below, and so presented here as that

we can properly consider it. In the first place, it does not very clearly appear that the intoxication proved or claimed was of such a degree as to impair the capacity of the prisoner to form a deliberate premeditated purpose to take life. In the next place, it does not appear that the prisoner's counsel asked the court to say to the jury that the intoxication was evidence tending to prove that the killing was not premeditated, and that he could only be convicted of murder in the second degree; but the claim was in substance, that intoxication, as matter of law, reduced the offense to manslaughter.

In a case of less importance these considerations might have some weight and induce us to hesitate to grant a new trial; but in a capital case we are not disposed to enforce the rules, however salutary those rules may be in their general application, so rigidly as to hold the prisoner to the consequences of a mistaken view of the law by his counsel; especially when the course taken on the trial was such as practically to exclude from the minds of the jury a fact material to be considered in determining, not whether a crime was committed, but the measure of guilt.

The prisoner was indicted and on trial for murder in the first degree. As the homicide was not perpetrated by means of poison, or lying in wait, or in committing or attempting to commit any of the crimes enumerated in the statute, he could only be convicted of the higher offense by showing that it was a willful, deliberate and premeditated killing. A *deliberate intent* to take life is an essential element of that offense. The existence of such an intent must be shown as a fact. Implied malice is sufficient at common law to make the offense murder, and under our statute to make it murder in the second degree; but to constitute murder in the first degree, actual malice must be proved. Upon this question the state of the prisoner's mind is material. In behalf of the defense, insanity, intoxication, or any other fact which tends to prove that the prisoner was incapable of deliberation, was competent evidence for the jury to weigh. Intoxication is admissible in such cases, not as an excuse for

crime, not in mitigation of punishment, but as tending to show that the less and not the greater offense was in fact committed. I cite a few only of the many authorities which sustain this position. *Keenan* v. *The Commonwealth*, 44 Penn. S. R., 55; *Roberts* v. *The People*, 19 Mich., 401; *Pigman* v. *The State*, 14 Ohio, 555; *State* v. *Garvey*, 11 Minn., 154; *Haile* v. *The State*, 11 Humph., 154; *Shannahan* v. *The Commonwealth*, 8 Bush, (Ky.,) 463; *Ray's Med. Jur.*, 5th ed., 566.

As I have already said, the charge of the court was in itself well enough; but we must consider it in its application to the case on trial, and in the sense in which the jury probably understood it. When they were told that "drunkenness does not excuse a party from the consequences of a criminal act," it is probable that they did not distinguish between excusing a crime, and showing that the specific crime charged had not been committed; and when they were further told that "a man committing a criminal act, though intoxicated at the time, is a legal and proper subject of punishment," they undoubtedly understood the "criminal act" to mean murder in the first degree, and punishment to mean capital punishment, and that the intoxication of the prisoner, whether little or much, could legally have no bearing upon the question whether it was murder in the first or second degree. The danger is that the jury, while making up their verdict, excluded from their minds the subject of intoxication altogether; and that they were led to believe that the malice implied by law from the weapon used, and the circumstances attending the offense, was sufficient to constitute murder in the first degree, and that a deliberate premeditated design to take life was not essential. If so, it is manifest that injustice may have been done the prisoner. I think the court should have submitted to the consideration of the jury the fact of intoxication, if it was a fact, to be weighed by them in connection with the other evidence in the cause, in determining whether it was a willful, deliberate and premeditated killing.

For these reasons a majority of the court are of the opinion that a new trial should be advised.

In this opinion PARK, J., concurred. SEYMOUR, J., dissented. FOSTER, J., having tried the case below, did not sit.