LUTERAN v. UNITED STATES and four other cases. *

Nos. 10865–10869.

Circuit Court of Appeals, Eighth Circuit.

Nov. 29, 1937.

Rehearing Denied Dec. 17, 1937.

*Writ of certiorari denied 58 S.Ct. 642, 82 L.Ed. ——.

MERRILL E. OTIS, Judge.

Harry L. Jacobs, of Kansas City, Mo. (I. J. Ringolsky, William G. Boatright, Ludwick Graves, James Daleo, Ringolsky, Boatright & Jacobs, and Johnson, Lucas, Landon, Graves & Fane, all of Kansas City, Mo., on the brief), for appellant.

Sam C. Blair, Asst. U. S. Atty. of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and Randall Wilson, Richard K. Phelps, and Thomas A. Costolow, Asst. U. S. Attys., all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is the second of the so-called Kansas City, Mo., election cases to be tried in the District Court. The first case tried in this group of cases was Walker et al. v. United States (C.C.A.) 93 F.2d 383. The indictments in this and in the Walker Case are similar except as to the names of the defendants and the details of the overt acts.

The indictment in the present case is in two counts. It was submitted to the jury only upon the second count, which count charges conspiracy in violation of section 19 of the Criminal Code (18 U.S.C.A. § 51) to injure and oppress certain citizens of the 17th precinct of the 12th ward of Kansas City, Mo., by counting their votes at the November 3, 1936, general election not for the Republican candidate for Representative in Congress for whom they were cast, but for his Democratic opponent.

The defendants named in the indictment were John A. Luteran, Democratic precinct captain, who acted as challenger and watcher at the polling place; Leo B. Roach, a policeman stationed at the polling place on election day; and the following precinct election officials: Callie Clark, Democratic judge; Lorne E. Wells, Democratic judge; Frank H. Adams, Republican judge; Joe R. Wells, Jr., Democratic clerk; and Pearl Sperry, Republican clerk. At the commencement of the trial the defendants Callie Clark and Pearl Sperry changed their pleas from not guilty to nolo contendere. The other five defendants were convicted and are the appellants here.

Upon the trial of the case the appellants introduced no evidence in their own behalf. The government's testimony tended to show the following facts:

The voting place of the 17th precinct of the 12th ward was in the large display room of a monument company, in which were exhibited rows of stone monuments. A stove furnished heat for the room. At one side of the room were three offices used for business purposes, one of which, about 100 feet from where the voting took place, was furnished with a telephone and had a glass window in the partition separating it from the large display room.

The election officials arrived at the polling place at about 5:45 a. m. on election day with the election paraphernalia consisting of ballot boxes, poll books, ballots, tally sheets, and other essentials and arranged themselves about two tables just inside the door. The appellant Roach, a member of the police department, sat by the stove about 40 feet from the election officials.

The election proceeded without any unusual incident until about 2 o'clock in the afternoon. At that time appellant Luteran appeared with the key to the political ballot box, unlocked it, and with the assistance of appellant Lorne E. Wells dumped the ballots into a pasteboard carton. Later in the afternoon Luteran and two other men were seen in the back of the room with the box of ballots unfolding the ballots and laying them in piles. The box did not reappear until after the polls closed in the evening when appellant Roach was observed near the stove taking ballots out of the box, unfolding them and laying them in a pile.

The tally sheet, which shows the total vote for each candidate, was made out with the assistance of appellant Roach; and, at the direction of Luteran, was signed by all the officials about the middle of the afternoon. The ballots were not counted by the election officials.

After the polls had closed in the evening, Luteran⁷ said some one had called him on the telephone and said he could not be there and asked that a ballot be voted for him. Luteran thereupon put a ballot in the box. About 7:30 in the evening, a half hour after the polls closed, Luteran announced that he would have to have about 150 more votes. Over the protest of some of the officials, but with the assistance of others, about 150 names furnished by Luteran were written into the poll book and a like number of ballots put in the box.

The poll books, tally sheets, and ballots were introduced in evidence. Approximately 95 ballots showed that they had been changed from Republican ballots to Democratic ballots. This had been done by erasing the X under the Republican emblem on the ballot and entering an X in the Democratic circle. About 30 voters testified that they had cast straight Republican ballots. Their ballots were then identified by the serial number thereon and it was shown by an inspection of the ballots that they had been changed by the method described to Democratic ballots.

The official count reported by the election commissioners shows that 544 votes were cast in this precinct for the Democratic candidate for Congress and 35 for the Republican candidate. Had the changed ballots been counted as cast, the Republican candidate would have received approximately 130 votes.

Other details of the evidence will be referred to in connection with the alleged errors.

Five of the Kansas City election cases having been appealed to this court and submitted at the same time, an order was entered permitting counsel for all the parties and the government to file separate briefs covering questions common to all the appeals. All such common questions were considered and determined by this court in the Walker Case, supra, it being the first of the group of such cases to be tried and appealed. The decision of such common points in the Walker Case is controlling and will not be disturbed in this case.

In addition to the questions common to all these appeals the appellants assign as grounds for reversal in this case (1) the insufficiency of the evidence, (2) want of evidence to connect appellant Roach with the conspiracy, (3) admission of the testimony of grand jurors, (4) evidence of stuffing of the ballot box, (5) admission of certain testimony of witnesses Sperry, Clark, and Norstrom, (6) the charge to the jury, and (7) denial of a motion to set the order of cases for trial.

The contention that the evidence of intent to injure citizens is not sufficient to support the verdict cannot be sustained. Upon similar facts the same argument was made in the Walker Case, supra. That decision is controlling here.

Similarly the claims (1) that the testimony of grand jurors was not admissible, (2) that evidence of stuffing the ballot box was not admissible, and (3) that the court erred in denying the motion to set the order of cases for trial were raised, argued, and disposed of in the Walker Case, supra. The record is substantially the same in this case and in the Walker Case upon these points. We held in the Walker Case that all these contentions were without merit, and so do we here.

There remain for consideration the alleged errors peculiar to this case alone. The first of these is that there is not sufficient evidence to sustain the conviction of appellant Roach. It is argued in his behalf that the evidence relating to him is as consistent with innocence as with guilt, and hence is insufficient to sustain the conviction. The contention is that since he was only a policeman stationed at the polling place he had no other official duty than to prevent a breach of the peace; that the fact that the conduct of the election officials in his presence was dishonest cannot be attributed to him, even though he might have been able to interfere and defeat the object of the conspiracy if he had been inclined to do so. It is pointed out that there is no evidence that any acts of violence were committed in his presence or that he refused to help any one who requested his aid, or that he assisted the conspirators by means of any neglect of his duties as a city policeman.

This court has recognized for practical reasons that where proof of a conspiracy has been established a relatively slight amount of evidence connecting the defendant therewith is sufficient to sustain a verdict. McDonald v. United States, 89 F.2d

128 (C.C.A.8); Galatas v. United States, 80 F.2d 15 (C.C.A.8). Participation in the formation of the conspiracy is not essential to culpability if after it was formed the defendant aided or abetted it with an understanding of its purpose. McDonald v. United States, supra; Laska v. United States, 82 F.2d 672 (C.C.A.10); Burkhardt v. United States, 13 F.2d 841 (C.C.A.6). The evidence must disclose something further than participation in the offense which is the object of the conspiracy at some stage of its execution, for there must be proof of an unlawful agreement either express or implied. Dickerson v. United States, 18 F.2d 887 (C.C.A.8); Linde v. United States, 13 F.2d 59 (C.C.A.8); Burkhardt v. United States, supra. But where the defendant aided the conspirators knowing in a general way their purpose to break the law the jury may infer that he entered into an express or implied agreement with them. Galatas v. United States, supra; McDonald v. United States, supra.

■ The testimony respecting appellant Roach and upon which the government bases its claim that he was a member of the conspiracy is briefly as follows: Mrs. Johnson, a Republican watcher at the polling place, testified that she saw Roach during the afternoon in the back part of the room out of the sight of the election officials entering marks upon the official tally sheets. Mrs. Clark, a Democratic election judge, saw him helping to unfold the ballots after the polls closed. He was about 6 feet away when Luteran told the Republican watcher, "We are not going to count these ballots * * * I will give each Republican 35 and we will take all the rest." He was present when Luteran compelled Mrs. Clark to sign the tally sheet before the polls closed. There is also evidence from which the jury would be justified in believing that Roach overheard and saw various other things which characterized the fraudulent conduct of the conspirators, such as Luteran's removal of the ballots from the box in the afternoon, the protests of the Republican judge, and Luteran's directing the clerks to add 150 names to the list of voters.

In view of these facts it cannot be said that there is no substantial evidence that Roach knew of the conspiracy when he handled the ballots and marked the tally sheets. He could have had no lawful purpose in mind in marking the tally sheets when he knew that the election officials' had not

counted the ballots. Every hypothesis of innocence is destroyed by his knowledge of the manner in which Luteran and the other conspirators had behaved throughout the afternoon. There is in the record substantially more than the "slight evidence" which this court has held to be sufficient to sustain a verdict of guilty.

We have to consider further, also, the alleged errors in the admission of certain testimony of the witnesses Clark, Sperry, and Norstrom.

Over objection of appellants Callie Clark, the Democratic election judge indicted with appellants and who at the commencement of the trial entered a plea of nolo contendere, testified that after the indictment was returned appellant Luteran came to her house several times and had conversations with her. In one of the conversations she testified: "He assured me that I had nothing to worry about, that everything was safe. He said, 'Look what we pulled in the primary', he said, 'we are going to grab Milligan out and send him to Philadelphia, or another seaport, and we will send Judge Otis back to St. Joe, and put in a judge we can handle.'"

Again, A. J. Norstrom, special agent for the Federal Bureau of Investigation, testified that he interviewed each of the appellants about February 8, 1937, which was after the indictments were returned and before the trial. The substance of his conversations with the various appellants is that they declared in effect that they had observed no irregularities in the election, and some of them said they had participated in counting the ballots. These interviews are claimed to be inadmissible and prejudicial.

■ The testimony of Mrs. Clark was clearly admissible against Luteran, and the testimony of Norstrom was admissible against all the appellants interviewed by him for the purpose of showing their consciousness of guilt. For the same reason it was proper to admit the testimony of Mrs. Clark that appellant Roach warned her not to testify. Wilson v. United States, 162 U.S. 613, 620, 16 S.Ct. 895, 40 L.Ed. 1090; Madden v. United States, 20 F.2d 289, 294 (C.C.A.9). Such testimony being admissible for a legitimate purpose, the fact that it is prejudicial is not ground for reversal. Cochran v. United States, 41 F.2d 193, 206 (C.C.A.8).

██ Pearl Sperry, an election clerk who was also indicted and entered a plea of nolo contendere, testified on cross-examination in reference to the writing in of the names in the books. She said that she knew it was wrong, but that she did not call the policeman nor the election commissioners and that she had never called anybody nor complained about it to anybody until after she was indicted in this case. On redirect she testified: "I was asked if I called a policeman, if I called Mr. Roach during the day when I saw what I thought to be irregularities. As to why I didn't call Mr. Roach, it wouldn't have been worth while. He was working right along with the rest of them." After this evidence was received, it was objected to as a conclusion and as being highly improper. The objection came too late, and no motion to strike was made. Mrs. Sperry does not appeal. Therefore no substantial right of appellants was denied. Smith v. United States, 267 F. 665, 670 (C.C.A.8).

██ Several of the specifications of error relate to instructions to the jury. In one of the instructions complained of the court told the jury that a conspiracy need not be formed by an express agreement, but that "a conspiracy may be entered into by conduct as well as by an agreement in words, by acquiescence and by silent consent." Appellants invoke the rule that mere acquiescense or silence or failure of an officer to perform a duty does not make one a participant in a conspiracy unless he acts or fails to act with knowledge of the purpose of the conspiracy "and with the view of protecting and aiding it." Burkhardt v. United States, 13 F.2d 841, 842 (C.C.A.6). The instructions read as a whole are not subject to this criticism. Here there is evidence from which the jury may have found that each of the appellants actively aided in the furtherance of the design of the conspiracy with full knowledge of its purpose. Besides, the court further instructed the jury that one could not be convicted as a conspirator upon mere knowledge or approval, but that "there must, in addition to such knowledge or approval, be voluntary, willing, knowing and intentional cooperation or agreement to cooperate before there can be any conspiracy." Guinn v. United States (C.C.A.) 228 F. 103, 110 (C.C.A.8).

██ It is complained that the court informed the jury that certain facts testified to by government witnesses were undisputed, whereas a plea of not guilty in a criminal case denies every fact and circumstance in evidence. Ezzard v. United States, 7 F.2d 808 (C.C.A.8). The rule has no application to the particular instruction complained of in the instant case, because the court further charged the jury without exception that "it has been very frankly stated by counsel for the defendants that they believe every word that the witnesses * * * for the government have testified to." If this be true, and it must be assumed to be true, it is an admission that the facts so testified to are "undisputed." Taylor v. United States, 19 F.2d 813, 817 (C.C.A.8).

In charging the jury that its verdict must be unanimous and must reflect the conscientious judgment of each juror, the court said further in substance that no one juror should set himself against all of his associates without consulting their views, and that he should agree with them if he could conscientiously do so. The court then expressed the hope that the jury would agree as early as possible but cautioned them to "take all the time you need for a careful consideration of the case."

██ The criticism of this instruction is that it was inappropriate to give it at that stage of the trial; that such an instruction is not appropriate until some such circumstance as an apparent disagreement exists. The timeliness of such an instruction lies within the discretion of the trial judge, and in the absence of an abuse of that discretion resulting in prejudice this court cannot interfere. Abuse of discretion cannot be predicated upon mere conjecture.

It is further urged that the court erred in including in an instruction an illustration. The instruction is as follows:

"To illustrate,—I have often found that a principle is made more clear by illustration, it is to me, certainly,—suppose we have A, who is a precinct captain, and B and C, who are respectively a Republican and Democratic judge, and this precinct captain, we will say he is a Republican precinct captain, he intends that although he knows that usually there are about 150 Democratic votes cast in a given precinct, he intends that there shall not be more than fifty of them counted. He intends that, and he says to B and C, 'That is what I am to accomplish.' Maybe B is the sort of a judge who is real, will fight for the rights of her party, and so he gets rid of her and puts in another judge by the name of D. Now, we have A, the Republican captain, C and D, and he

says, 'Now, we are not going to give the Democratic candidate for Congress in this (precinct) more than fifty votes although we know there will be about 150 cast,' and C and D protest a little. They say, 'We don't want to get mixed up in anything of that kind, it might turn out seriously.' A says, 'Don't worry, don't worry. You don't have to do anything. Just keep your eyes shut and your mouths shut and some time during the day if I have an opportunity, I will slip the ballots away, but you don't need to know what is going on, out of your sight.' C and D say all right. C and D have agreed to the result sought, which is that in that precinct a great many Democratic voters shall not have their votes counted. They have agreed to that result and having agreed to that result, they have agreed to anything that A is going to do with those ballots when he gets them out of their sight.

"The point I want to make clear to you is that the conspiracy which is charged here is not that these ballots would not be miscounted in a certain way, but the conspiracy charge is that they will not be counted as they were cast, for the candidates for whom they were cast. So the last question that you will ask yourselves is, were there any others besides Luteran who were parties to this conspiracy, if you believe the conspiracy has been proved at all. In passing upon that question, of course, you will consider all of the facts, what positions they occupied, what their duties were, what opportunity they had to see what was going on, all of those facts and all of the testimony in the case, and upon the basis of that testimony you will say who, if any, were parties to the conspiracy, if the conspiracy, in your opinion, has been proved."

▮▮▮ The criticism directed to this instruction is that it is argument, pure and simple. In a sense it may be said of all illustrations that they are argumentative; but if all they accomplish is to clarify the issue for the jury it cannot be said that they are not fair and proper. An illustration is not objectionable merely because "it bore hardly upon the defendant," or "only because the transaction of which he was charged was one of like character, and indicative of the same intent." Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 38, 39 L.Ed. 91. In considering whether an illustration is fair or prejudicial, it is necessary to consider the instructions as a whole and all the facts and circumstances surrounding the trial and shown by the evidence, such as the complexity or simplicity of the issues and the multiplicity of facts. So considering the illustration here, we see nothing in it to complain of.

▮▮▮ Finally, it it contended that the instructions as a whole are argumentative, and particularly that portion of them in which the court reviewed the evidence. The instructions as a whole are too lengthy to set out in this opinion. Even that portion in which the evidence is reviewed would extend the opinion beyond reasonable limits. Nevertheless we have carefully read the instructions with appellants' criticism in mind and we find no basis for the complaint that they are unfair, argumentative or prejudicial to the rights of the appellants.

We have reviewed all of the complaints and found no substantial error in the record; the judgments appealed from are, therefore, affirmed.