STATE OF CONNECTICUT *v.* PETER S. JOHNSON

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 4—decided July 1, 1952

*James J. A. Daly,* public defender, and *John A. Arcudi,* special assistant public defender, with whom was *Charles R. Covert,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on

the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

JENNINGS, J.   The defendant has appealed from his conviction of murder in the second degree. He has abandoned his claim that the verdict should have been set aside. The only assignment of error requiring extended discussion is his claim, made in various ways, that the court failed to instruct the jury correctly on the difference between murder and manslaughter and, specifically, on the effect of the defendant's claimed intoxication on the element of implied malice.

The state offered evidence to prove and claimed to have proved the following facts: The defendant, at the invitation of James Navitsky, the deceased, lived in the basement of a house in Fairfield owned and occupied by Navitsky.  A few days before September 4, 1950, Labor Day, Navitsky ordered the defendant to leave the premises. On September 4 this order was repeated. Both men went out. They returned about 7 p. m.   The defendant had been drinking but was not intoxicated.   Navitsky was under the influence of liquor to a considerable extent.   The two men met in the yard and a quarrel about when the defendant would leave started immediately.   Navitsky picked up a two-by-four and swung at the head of the defendant. The latter then ran some distance to a bench, picked up a hammer, came back to where Navitsky was standing and struck him on the head, knocking him to the ground. Twice Navitsky tried to rise but was met with more blows of the hammer until he sank to the ground. The defendant continued to rain blows upon him until he was dead.   The men were about equal in height but Navitsky was heavier by about sixty

pounds. The defendant admitted that he killed Navitsky, substantially under the circumstances described. His single assignment of error attacking these claims of proof has been withdrawn.

The defendant is entitled to have the substance of his draft finding added to the finding. With this addition his claims of proof were as follows: He was peaceful in character and reputation. For several days prior to September 4 Navitsky had been making threats to fight with him and throw him out of the house. Navitsky was a much more powerful man. He provoked the fight and struck the defendant with the two-by-four. The latter feared for his life. He acted in self defense. He was drunk. His habitual drinking had impaired his memory. The analysis of Navitsky's blood after his death showed that he was in the dizzy and delirious stages of intoxication. He acted like a drunken maniac.

The original charge covers eighteen pages of the printed record. It was full, complete and based on accepted precedents. It applied the general rules to the facts of the case. The defendant's brief is much broader than the assignments of error but the elaborate written requests to charge and oral exceptions to the charge require, especially in a murder case, that his claims be considered.

The defendant's main claim, as stated by his counsel and repeated in his brief, was that his "intoxication would have a bearing on whether he was reasonably provoked, whether there was reasonable provocation in view of his condition so as to generate a heat of passion so far as this accused is concerned." This was the principal point of the case. The court very properly started with the definitions of and the distinction between murder and manslaughter. This distinction is the presence of malice in murder and

its absence in manslaughter. The court then discussed at length the effect of a killing in self defense and mentioned the defense of the defendant's intoxication. The charge followed, in general, *State* v. *Johnson,* 41 Conn. 584, 587. The court charged among other things: "Murder in the second degree rests on implied malice and intoxication does not necessarily rebut or disprove any essential element of that crime, but it might have the effect of proof of provocation or justification in reducing the offense to manslaughter. To constitute murder in the second degree it is necessary that intent shall be the result of malice. In manslaughter [the intent] may be the result of provocation or sudden passion." This charge, considered in connection with the court's further instruction, which followed shortly, that the jury should take "into account the infirmities of human nature," met the precise point raised by the defendant. Incidentally, it is sufficient answer to another of the defendant's contentions, that the court failed to charge that a criminal intent is an essential element in both murder in the second degree and manslaughter.

At the close of the charge exceptions were taken, and no objection is made to the instructions given in response thereto. The jury apparently had difficulty in deciding the case and returned twice with questions. The first sought a definition of the difference between implied malice and heat of passion. The question was not answered directly. The obvious reason lies in the terms of the question. What the jury really wanted to know was the effect of heat of passion on the existence of implied malice. The court's instruction on this matter was a sufficient guide to the jury. No error is assigned to the additional charge in response to the second question.

It is true that an additional charge in answer to a question of the jury must state the law correctly. *Annes* v. *Connecticut Co.,* 107 Conn. 126, 131, 139 A. 511. It is also true that "[o]f necessity, additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges." *State* v. *Parker,* 114 Conn. 354, 368, 158 A. 797. "[A]n appellate court ought not to be expected to create substance out of shadows, to conjure up errors out of trifles, or to seek for judicial irregularity by microscopic processes, speculative imaginings, or refined reasoning." *Foote* v. *Brown,* 81 Conn. 218, 227, 70 A. 699; *State* v. *Parker,* supra, 370; *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611. The charge must be read as a whole. *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 164, 75 A.2d 385; *State* v. *Murphy,* 124 Conn. 554, 566, 1 A.2d 274. So considered, it adequately protected the rights of the defendant. *State* v. *Hayes,* 127 Conn. 543, 594, 18 A.2d 895.

The court allowed the defendant to offer evidence to prove his peaceful disposition. He attempted to follow this up with evidence of the reputation of Navitsky for pugnacity. The questions were excluded. The defendant testified directly to the fact that Navitsky started the fight in question and was quarrelsome and irresponsible when under the influence of liquor. In view of the defendant's antecedent knowledge of Navitsky's disposition, the latter's reputation in that regard would have been immaterial upon the issue of the defendant's guilt. Furthermore, the recital of the evidence stating the ruling contains no intimation that the defendant was acquainted with that reputation and the trial court found that no evidence to this effect was offered.

This finding is attacked but is supported by the evidence. The ruling was correct. *State* v. *Padula,* 106 Conn. 454, 457, 138 A. 456.

The claim of the defendant that the court erred in withdrawing from the jury the question whether his habitual drinking resulted in imbecility or insanity has no basis in the finding and is without merit. The additions from the draft finding related to the effect of Navitsky's drinking, not to that of the defendant's drinking, as argued in his brief.

The final claim of the defendant is that the court erred in failing to charge in accordance with this request: "The general rule is that where one without fault himself is assaulted in his dwelling house he need not retreat from the assailant but may resist the assault even to the extent of taking the life of the adversary when necessary." *State* v. *Bissonnette,* 83 Conn. 261, 268, 76 A. 288; *State* v. *Perkins,* 88 Conn. 360, 365, 91 A. 265. The short answer to this claim is that the fight took place, not in the basement of the house, but in the yard, where the deceased had a right to be. The general charge on self defense fully covered this claim. See *State* v. *Bailey,* 79 Conn. 589, 598 n., 65 A. 951.

"The record shows that the accused had a fair and impartial trial, and that the result reached substantially turned upon the nature of the impression made upon the jury by his own testimony. In view of the conceded facts, of the whole story told by the accused, and of his manner of telling it, the jury have found by their verdict that his testimony, in connection with all the evidence produced, did not raise a reasonable doubt as to his guilt . . . ." *State* v. *Bailey,* supra, 603.

There is no error.

In this opinion the other judges concurred.