STATE OF CONNECTICUT *v.* MICHAEL HINES

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 6—decision released May 25, 1982

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Joette Katz,* assistant public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. A jury found the defendant guilty of assault in the first degree in violation of General Statutes § 53a-59.[1] In his appeal from the judgment rendered on the verdict the only errors claimed relate to the instructions given to the jury. The defendant contends (1) that the court failed to charge, as requested, that his mental retardation should be considered in deciding whether he acted with the specific intent required by the statute to constitute the offense; and (2) that in illustrating the application of the law of self-defense for the jury the court used an example so similar to the facts of the case that it amounted to the direction of a verdict for the state on that issue.

Many of the facts concerning the offense are not disputed. About midnight of February 20, 1976, the victim was found in a closet of his apartment by two persons who had heard his cries for help. He had been stabbed in the back with a knife which penetrated his body to a depth of more than four inches causing serious injuries to his chest and spinal cord. After extensive surgery and hospitalization he was partially paralyzed at the time of trial. The defendant admitted that he and a friend had visited the victim at his apartment in East Haven and that he had stabbed the victim with a knife which the defendant had previously shown to the victim.

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

The information charged that the offense had been committed "by means of a dangerous instrument, to wit, a knife."

He testified also that he had acted in self-defense during a quarrel over a debt when the victim picked up the knife which was lying on a table and rushed at him. He claimed that in the ensuing struggle his left hand was cut but that he succeeded in taking the knife from the victim.

The version given by the victim at the trial was that no quarrel occurred before the assault that evening. He testified that the defendant, whom he knew but had not seen for eight or nine months, unexpectedly came to his apartment with a friend to use the telephone. After they left, the defendant returned about five minutes later to use the phone again. After completing the second telephone call the defendant requested a piece of wire. Id. The victim went to a closet where he kept his tools and, as he bent down in the closet, the defendant stabbed him with a knife which had been previously shown to him. The victim fell down inside the closet and the defendant slammed the closet door shut. The defendant sprayed a can of mace around the edges of the closet door and then fled from the premises.

## I

The defendant claimed not only that he acted in self-defense but also that his mental deficiency was so great that he could not have formed the specific intent "to cause serious physical injury to another person" as required by General Statutes § 53a-59 (a) (1). He presented the testimony of two school psychologists and a psychiatrist in support of his claim of diminished mental capacity. Their testimony was that the defendant suffered from some degree of mental retardation not amounting to an inability to distinguish right from wrong. Psychological examinations given to the defendant

when he was in a special class at high school for the "educatably [sic] mentally retarded" indicated that his reading ability was at the second and third grade level and that he performed other curriculum tests at a range "anywhere from third grade to fifth or sixth grade." Outside school he would be "less alert . . . less cognizant of some of the things he does in certain situations . . . less aware of making proper judgments . . . less capable of making a sound judgment." He was described as having not "a specific learning deficit, but . . . a problem in comprehension and reasoning" indicating "some degree of mental retardation."

The defendant has not claimed, either at trial or before us, that this evidence was sufficient to raise the defense of insanity. See General Statutes § 53a-13. He submitted a request to charge that the jury should consider the evidence of his mental retardation "in deciding whether he was capable of forming the specific intent necessary to constitute the crime charged . . ." and also, with respect to the issue of self-defense, in determining "whether what he did was reasonable for him under all the circumstances as they appeared to him at the time."

In the instructions on self-defense the trial court gave the defendant substantially what he requested and he has no quarrel with that aspect of the charge. We have no occasion, therefore, to decide whether the requested instruction, which seems to employ a subjective test involving the mental characteristics of the actor rather than the objective standard of the "reasonable man," was appropriate. See General Statutes § 53a-19 (a); 2 Wharton, Criminal Law (Torcia Ed.) § 125; see also *State*

v. *Bailey,* 79 Conn. 589, 598n, 65 A. 951 (1907);
cf. Model Penal Code §§ 3.04 and 3.09, Comment 2
(Proposed Official Draft 1962).

The state claims that there is no "explicit"
authority allowing proof of mental retardation to
negate an element of the crime and that to do so
would allow a diminished mental capacity defense
going beyond the confines of the defense of insanity
under General Statutes § 53a-13. While it is uni-
formly held that subnormal mentality not amount-
ing to an inability to distinguish right from wrong
is no defense to a crime, there is a split of authority
upon whether evidence of such mental deficiency
should be considered in determining whether the
defendant acted with the necessary specific intent
required for the particular offense. 1 Wharton,
Criminal Law and Procedure (Anderson) § 41; see
annots., 166 A.L.R. 1194, and 22 A.L.R.3d 1228;
see *Fisher* v. *United States,* 328 U.S. 463, 473–74
n.12, 66 S. Ct. 1318, 90 L. Ed. 1382 (1946).

During the period when murder was classified
into two degrees, we followed the rule that a person
who was so intoxicated at the time he killed some-
one that "he was incapable of conceiving and car-
rying into execution a deliberate plan to kill, or
was mentally incapable of intent or premeditation,
or was beyond the power of self-control at the time"
would not be guilty of murder in the first degree,
for lack of the necessary mental state. *State* v.
*Davis,* 158 Conn. 341, 352, 260 A.2d 587 (1969);
*State* v. *Dortch,* 139 Conn. 317, 323, 93 A.2d 490
(1952); *State* v. *Johnson,* 40 Conn. 136, 143 (1873).
We have also recognized that mental deficiency or
abnormality resulting from factors other than intox-
ication might properly be considered in deciding

whether a murder had been "wilful, deliberate and premeditated . . . ." *State* v. *Donahue,* 141 Conn. 656, 663, 109 A.2d 364, cert. denied and appeal dismissed, 349 U.S. 926, 99 L. Ed. 1257, 75 S. Ct. 775 (1954); *Andersen* v. *State,* 43 Conn. 514, 524 (1876). "In behalf of the defense, insanity, intoxication, or any other fact which tends to prove that the prisoner was incapable of deliberation, was competent evidence for the jury to weigh." *State* v. *Johnson,* supra, 143. The state urges that this principle be confined to murder cases, but we see no reason not to apply it in any case where a specific intent is an essential element of the crime involved, including the assault charged in this case. See *People* v. *Wetmore,* 22 Cal. 3d 318, 583 P.2d 1308 (1978); *People* v. *Anderson,* 63 Cal. 2d 351, 406 P.2d 43 (1965); *People* v. *Gorshen,* 51 Cal. 2d 716, 336 P.2d 492 (1959); *Schwickrath* v. *People,* 159 Colo. 390, 411 P.2d 961 (1966); *State* v. *Barney,* 244 N.W.2d 316 (Iowa 1976); *People* v. *Colavecchio,* 11 App. Div. 2d 161, 202 N.Y.S. 2d 119 (1960). Such evidence is admitted not for the purpose of exempting a defendant from criminal responsibility, but as bearing upon the question of whether he possessed, at the time he committed the act, the necessary specific intent, the proof of which was required to obtain a conviction.

The state also argues that "[e]ven had the defendant offered proof of his mental condition to negate the intent element, rather than for the avowed purpose of proving the subjective reasonableness of his self-defense claim, it is questionable whether he was entitled to a jury instruction to that effect." In its argument maintaining that there is no explicit authority allowing proof of mental retardation to negate an element of the

crime, the state points out that Practice Book § 759 which "suggests" that a defendant may "introduce expert testimony relating to a mental disease or defect, or another condition bearing upon the issue of whether he had the mental state required in the offense charged . . ." also sets forth notification requirements which were not complied with by the defendant. There was, however, no objection to this evidence at trial. Practice Book § 761 provides as the only sanction for noncompliance with § 759 that the court "may exclude the testimony of any expert witness offered by the defendant on the issue of his mental state." Thus, the failure to comply with the notice requirement would hardly justify a refusal to give the requested instruction.

The defendant excepted to the trial court's failure to give one of his requested charges concerning the use, by the jury, of the evidence concerning the defendant's mental retardation.[2] Counsel indicated that this request pointed out the applicability of that evidence to the case in two ways. He admitted that the court gave that portion of the request "with regard to the issue of self-defense in terms of

---

[2] This request was the following:

"16. Evidence has been presented in this case indicating that Michael Hines is mentally retarded and that he was mentally retarded at the time of the events which are the subject of this trial. This evidence may be considered by you for two purposes:

"*First.* One of the essential elements of the crime charged is that the defendant have the specific intent to inflict serious physical injury upon the other person. You may consider the evidence of Michael's mental retardation in deciding whether he was capable of forming the specific intent necessary to constitute the crime charged, if you have a reasonable doubt on that issue, you must find him not guilty.

"*Second.* As to the issue of self-defense, you are required to place yourselves in the defendant's shoes and determine whether what he did was reasonable for him under all the circumstances as they appeared to him at the time. You may consider the evidence of Michael's mental retardation in making these determinations."

placing themselves in Mr. Hines' shoes." He, maintained, however, that the court did not charge the jury "that they may also consider [the evidence of the defendant's mental retardation] with respect to the specific intent element, which is an essential element of the crime charged . . . that I had requested in Paragraph 16." The court said it thought it had done so and did not respond to this exception with further instructions. We do not agree with the defendant.

The defendant was entitled to have the jury correctly and adequately instructed. *Mack* v. *Perzanowski,* 172 Conn. 310, 312, 374 A.2d 236 (1977). " 'The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result.' *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 [1974]; *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277 [1973]. It is well established that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 [1976]; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147 [1974]." *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); see *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). A charge must be considered as to its probable effect on the jury in guiding them to a correct verdict in the case. *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933).

The trial court charged on the testimony of the experts who testified "to the ability of the defendant to comprehend." The court charged: "Now, we also have witnesses, expert witnesses. Now, these

witnesses testified to the ability of the defendant to comprehend. Now, you are allowed to take their testimony as experts and to accept it. However, you also have the right to reject their testimony, even though they are expert witnesses. But, if you feel you want to take credence in their expertise, you are allowed to do so." In charging on self-defense the trial court told the jury: "Now, this case does present a novel aspect in that there was evidence as to Michael Hines' mental ability. You heard the expert testimony, and I gave you a statement as to expert testimony. And, their testimony—and I say it is your recollection, not mine—that the probable reading level of Michael Hines was second grade. But, the learning ability went as high as six [sic] grade. And, they felt he was educably mentally retarded. You heard the evidence to that as well as I have. So, in addition, the Court has told you about reasonable. But, by reasonable, we ask you to remember that reasonable, as it applies to Michael Hines, what motivated him. No one can look into his mind and say what is there. And, it must be inferred from his conduct in light of the surrounding circumstances. And, you determine that. You heard the testimony of Michael Hines, and you had a chance to observe him. And, you would have to decide, based upon his ability to understand the circumstances and conditions, as to whether he acted with or without reason. I say that is your determination; and with or without intent to commit the crime. Because, those are necessary elements."[3] The

---

[3] We do note that the court, in instructing the jury on the essential elements of assault in the first degree, said: "The third essential element of assault in the first degree so far as you are concerned *in this case* is the requirement that the person on trial *actually have intended* to inflict serious physical injury as I have defined it to you.

charge as a whole, especially that portion of the self-defense instruction which speaks of the "novel aspect" of the case referring to the defendant's mental ability, serves as an adequate nexus between the necessity of considering his particular mental ability and his capability of forming the requisite intent. Although that connection was not as pellucid as possible, the core connection was present and was, fairly read, evident to a jury of laymen. The charge considered as a whole gave the jury the "practical guidance" needed in reaching its verdict. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 360, 294 A.2d 305 (1972); see *State* v. *Rose,* 169 Conn. 683, 688–89, 363 A.2d 1077 (1975).

## II

The defendant also claims that the example given by the court in its charge on the law of self-defense had the effect of directing a verdict against him on that issue. We do not agree.

During the course of its instructions on self-defense, the court stated: "Now, let me give an example. Suppose Mr. Smith attacks me with a knife and suppose I repel him by taking the knife away from him, I would not be justified in that instance in then placing the knife in his body, because the danger is now past." The defendant

---

In this case, then, the prosecutor has the burden of proving beyond a reasonable doubt that Michael Hines *not only intended* to stab Thomas Barry in the bac, [sic] but also prove beyond a reasonable doubt that Mr. Hines *knew and understood* that by doing so he would be inflicting serious physical injury on Barry, on Mr. Barry, and that Mr. Hines *actually intended* at the time to inflict serious physical injury on Thomas Barry in that way." (Emphasis added.) "When a mental element is a constituent of a crime, the character of that element must be identified." *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971). The court did so in this case. The charge, read as a whole, identifies the specific intent required for the crime charged.

claims that this example "definitely invaded his right to have the jury resolve the conflicting evidence presenting [sic] on the issue that was the crux of the defendant's entire case." He argues that, because it is presumed that juries follow the court's "directions," then "once they determined that the defendant grabbed the knife from Barry [the victim], they never faced the issue of whether or not he was acting in self-defense." Thus, because self-defense was the "primary issue in the case," the court's use of this "analogy," removing, as he claims, this issue from the jury, "infected" the entire charge constituting reversible error. It is claimed that because this error concerned the defendant's constitutional right to a fair trial, i.e., to have the jury determine all factual issues, the applicable standard is whether it is reasonably possible that the jury was misled. See *State* v. *Rose,* supra, 687–88.

"The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Mullings,* supra, 275; see *State* v. *Rose,* supra, 687–88; *Siladi* v. *McNamara,* supra, 515. "The main charge and supplemental instructions are to be read and considered as a whole." *State* v. *Edwards,* 163 Conn. 527, 537, 316 A.2d 387 (1972); see *State* v. *Johnson,* 139 Conn. 89, 93, 90 A.2d 905 (1952). Individual instructions are, of course, not to be judged in artificial isolation from the overall charge. See, e.g., *State* v. *Holmquist,* supra, 151; *State* v. *Roy,* supra, 40. For an erroneous part of a charge to be reversible error, the court must consider the charge as a whole, and "it must be determined, in appeals not involving a constitutional question, if it is reasonably probable that the jury

were misled . . . and, in appeals involving a constitutional question, if it is reasonably possible that the jury were misled." *State* v. *Rose, supra,* 687–88.

Although it is well settled that the trial court may, in its discretion, call the attention of the jury to the evidence or lack thereof bearing on any point in issue and comment on the weight of the evidence, it may do so only "so long as it does not direct or advise the jury how to decide the matter." *State* v. *Mullings, supra,* 274. "It must always be borne in mind that litigants have a constitutional right to have issues of fact decided by the jury and not by the court." *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1954); see *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594 (1933).

Common sense, and more to the point, fairness, must acknowledge that the use of a proper example in jury instructions serves to make less abstract and more comprehensible the meaning of a complex legal concept or term. The same considerations, however, would indicate that a jury may give undue weight to examples because they are easier to understand and may even simply compare the defendant's actions with the example. "To prevent these adverse effects, the trial judge must clearly indicate that the examples are *only* examples, and that the jury must determine guilt or innocence by following the jury instructions as a whole." (Emphasis in original.) *People* v. *Shepherd,* 63 Mich. App. 316, 322, 234 N.W.2d 502 (1975); see *People* v. *Murphy,* 28 Mich. App. 150, 160, 184 N.W.2d 256 (1970).[4] "An illustration is not objec-

---

[4] In *People* v. *Murphy,* 28 Mich. App. 150, 184 N.W.2d 256 (1970), the trial court, in its instruction, used the example of a sledgehammer as a tool "adapted and designed" for breaking and entering under the statute charged. One of the tools with which the defendants

tionable merely because 'it bore hardly upon the defendant,' or 'only because the transaction of which he was charged was one of like character, and indicative of the same intent.' *Allis* v. *United States,* 155 U.S. 117, 15 S. Ct. 36, 38, 39 L. Ed. 91 [1894]. In considering whether an illustration is fair or prejudicial, it is necessary to consider the instructions as a whole and all the facts and circumstances surrounding the trial and shown by the evidence, such as the complexity or simplicity of the issues and the multiplicity of facts." *Luteran* v. *United States,* 93 F.2d 395, 401 (8th Cir. 1937), cert. denied, 303 U.S. 644, 58 S. Ct. 642, 82 L. Ed. 1103 (1938). "The extent to which a judge will use hypothetical examples and discuss particular possible factual issues must be left largely to his discretion." *Commonwealth* v. *Thurber,* 418 N.E.2d 1253, 1257 (Mass. 1981). (Jury instructions giving various examples of necessity in passing upon that "defense" in a prosecution for the crime of escape held not to limit doctrine of necessity too narrowly and take away from jury the question whether the defendant's conduct was reasonable.)

The trial court, on a number of occasions, instructed the jurors that they were the judges of the facts in issue. It charged them that no matter what the court said about the facts or evidence, they were the judges of the facts and the evidence. At the outset of the charge, it stated: "My chief concern in the facts in the case is to refer to them

were charged with possessing in their trial for felonious possession of burglar tools was a sledgehammer found in their car. The defendants claimed prejudicial error resulted from the illustration. The court rejected that claim stating that "[a] reading of the instruction in its entirety reveals that the trial court properly instructed the jury on the element of the crime and that no prejudicial error occurred." Id., 160.

insofar as it is necessary to make clear to you the application of the rules of law which are relevant to this case." Shortly thereafter, the court said: "So, to repeat, it is not part of my duty to in any way decide the questions of fact. This is exclusively within your province. And, from all of the evidence produced here in this courtroom, you are to decide just what the true facts are." In the course of its instructions on self-defense, and in the sentence *immediately* preceding the example objected to the court specifically said: "The State shall have the burden of disproving such defense beyond a reasonable doubt."[5] We must presume, in the absence of a fair indication to the contrary, that the jury followed the court's instructions. See *State* v. *Barber,* 173 Conn. 153, 156, 376 A.2d 1108 (1977).

The challenged example was given during the course of the main charge. After the jury had retired, it requested written copies of the assault statutes in the first, second and third degrees "and the provisions for self-defense as given in the Judge's Charge." In thereafter instructing the jury on self-defense, the court did not restate the example which had been excepted to after its main charge.

The court's instructions, which included the example in question, did not have the effect of taking the decision on the issue of self-defense away from the jury. It was merely an example; the court specifically said it was. See *People* v. *Shepherd,* supra. The factual circumstances in the evidence concerning it were left for the jury to pass upon. The example cannot be said to be an unfair statement of

[5] In its supplemental charge on self-defense, the court repeated this instruction verbatim.

the law which it was offered to illustrate. It can hardly be characterized, as the defendant contends, as a "direction" to the jury. Nor did it contain any "distinct intimation" to the jury that this issue was no longer for it to decide because the court was directing it to decide that issue in a given fashion. See *State* v. *Rose,* supra, 688. It is stretching matters too far to say that the use of this example, in connection with the proposition of law involved, was such as to warrant a reversal on the theory that the use of it, as the defendant appears to suggest, brought about his conviction. See *United States* v. *Turley,* 135 F.2d 867, 870 (2d Cir. 1943); see also *Allis* v. *United States,* 155 U.S. 117, 123, 15 S. Ct. 36, 39 L. Ed. 91 (1894). Because we do not find that the use of the example constituted any error at all under all the circumstances, no analysis is needed, as claimed by the defendant, to determine if the jury was probably or possibly misled. See, e.g., *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976); *State* v. *Rose,* supra, 687–88.

There is no error.

In this opinion SPEZIALE, C. J., and PARSKEY, J., concurred.

SHEA, J. (dissenting). I disagree with the portion of the majority opinion which concludes that the charge as given by the trial court provided sufficient "practical guidance" to the jury with respect to its consideration of the evidence of the defendant's "mental retardation in deciding whether he was capable of forming the specific intent necessary to constitute the crime charged," as requested. The remark of the majority that the charge upon this subject, an excerpt of which is

quoted in the opinion, "was not as pellucid as possible" is an understatement, but that is not the point I wish to make. Nowhere in this part of the charge, which purports to comply with the request, is there any reference to the specific intent required as an element of the offense of assault in the first degree, i.e., "to cause serious physical injury to another person . . . . " General Statutes § 53a-59 (a) (1). Earlier in the charge the court had discussed this mental element of the crime as well as those for two lesser included offenses, assault in the second degree and assault in the third degree. No mention was then made of the mental retardation evidence, although there had been a previous reference in the instructions on credibility to the testimony of expert witnesses about "the ability of the defendant to comprehend." It was not until the conclusion of the instructions upon self-defense that the court briefly summarized the evidence of the defendant's mental retardation, as quoted in the majority opinion, closing this part of the charge as follows: "And, you would have to decide, based upon his ability to understand the circumstances and conditions, as to whether he acted with or without reason. I say that is your determination; *and with or without intent to commit the crime,* because those are necessary elements." (Emphasis added.)

The majority regards this passing reference to "intent to commit the crime" as sufficient compliance with a request for an instruction that the evidence of mental retardation be considered in deciding whether the defendant had the capacity to form the specific intent necessary for the crime. I do not. "It is the law of this state that a request to charge which is relevant to the issues of a case and which is an accurate statement of the law must be given."

*Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 357, 374 A.2d 1047 (1977). The placement of the instruction at the very end of an elaborate discussion of self-defense and the blending of the two issues upon which the mental retardation evidence was pertinent must have been highly confusing, especially when no attempt was made to relate the evidence to the previous discussion of intent. More importantly, the allusion to "intent to commit the crime" which is relied upon simply is not a sufficient reference to the specific intent required as an element of a particular crime. "When a mental element is a constituent of a crime, the character of that element must be identified." *State* v. *Bitting*, 162 Conn. 1, 5, 291 A.2d 240 (1971). "Intent to commit the crime" would ordinarily be understood to refer to the general intent to do the proscribed act, the physical assault, rather than to the specific mental element demanded by the statute. Ibid. "When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring specific intent." Ibid. Nowhere in the passage of the charge relied upon by the majority is there any mention of specific intent as distinguished from general intent which would have advised the jury to weigh the evidence of mental retardation on that essential element of the crime as the defendant requested.

The majority opinion concedes the validity of the point of law made in the defendant's request and does not dispute that he was entitled to that instruction. The earlier discussion of specific intent as an element of the crimes involved, which omitted any reference to mental retardation, cannot be deemed

to meet the request. The later allusion to "his ability to understand the circumstances and conditions, as to whether he acted with or without reason. . . . and with or without intent to commit the crime" does not mention specific intent but is phrased in the language of general intent.

Accordingly, I dissent.

In this opinion PETERS, J., concurred.