## PEOPLE v. TRILCK.

1. WORDS AND PHRASES—FURTHERANCE.
    *Furtherance*, a commonplace word, is ordinarily understood as an act of preferment, advancement, or promotion.

2. EVIDENCE—HEARSAY—CROSS-EXAMINATION.
    Hearsay testimony is not admissible as evidence because the essential right of cross-examination is absent.

3. CONSPIRACY—EXCEPTION TO HEARSAY RULE.
    An exception to the hearsay rule is recognized in conspiracy cases, where there is proof of a common enterprise or a mutual agency, so as to permit evidence of acts and declarations of a conspirator done or made while the conspiracy is pending and in furtherance of its object to be admitted against all conspirators.

4. SAME—PARTNERSHIP.
    A conspiracy is a partnership in crime.

5. SAME—POSTCONSPIRACY DECLARATION—LIMITATION OF APPLICATION.
    A postconspiracy declaration by a conspirator is admissible as proof of guilt of the declarant only, as the conspiracy had come to an end before its making.

6. SAME—POSTCONSPIRACY DECLARATION—LIMITATION OF APPLICATION—INSTRUCTIONS.
    It is reversible error for a trial court to fail to instruct jury before whom a conspiracy case is tried that postconspiracy declarations of an alleged conspirator are admissible against the declarant-conspirator only and is to be rejected as hearsay if it inculpates other defendants charged as conspirators.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 20 Am Jur, Evidence § 452.
[3] 16 Am Jur 2d, Conspiracy § 38.
[4] 16 Am Jur 2d, Conspiracy § 1.
[5, 6] 16 Am Jur 2d, Conspiracy § 40.
[7] 16 Am Jur 2d, Conspiracy §§ 38–40.

7. SAME—INCULPATORY STATEMENTS AS TO OTHER CONSPIRATORS
THAN DECLARANT.

> Statements made by a defendant who is charged with others
> with conspiracy to corrupt law-enforcement officers that in-
> culpated others than the declarant, rather than being in
> furtherance of the conspiracy were in derogation of it, and
> were inadmissible as to such other alleged conspirators since
> they were not made to advance the common objective.

Appeal from Wayne; Piggins (Edward S.), J. Submitted October 6, 1964. (Calendar Nos. 2–4, Docket Nos. 50,434–50,436.) Decided January 4, 1965.

Russell Trilck, Victor Folks, Willie Folks, Walter J. Wood, and LeRoy Stone, with others, were convicted of conspiracy to obstruct justice. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *James R. Ramsey,* Acting Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*Joseph W. Louisell* and *Ivan E. Barris,* for defendant Trilck.

*Harry Robert Bockoff,* for defendant Willie Folks.

KELLY, J. A 4-count conspiracy information charged defendants Ralph Phillips, Walter John Wood, Victor Folks, LeRoy Stone, Ira Bargon, Daniel McGhee, Russell Trilck, and Willie Folks, with conspiring during the period between February 13, 1953, and February 13, 1959, to bribe River Rouge police officers to refrain from enforcing the gambling laws of the State of Michigan, thus obstructing justice. All of the above defendants ex-

cept Russell Trilck and Willie Folks were police officers of the city of River Rouge.

A jury found defendants Trilck, Wood, Phillips, Stone, Victor and Willie Folks guilty, and defendants Bargon and McGhee not guilty.

The trial court sentenced defendants Russell Trilck and Willie Folks to a term of imprisonment of 2 to 5 years upon each of the two counts of which they were found guilty, said sentences to run concurrently and with recommendation that minimum terms be served. The remaining defendants found guilty were placed on probation, with the added condition in the case of Victor Folks that he serve the first six months of the probationary period in the Detroit House of Correction.

In pursuance of leave granted by order of this Court, defendants Victor Folks, Willie Folks and Russell Trilck filed their claims of appeal, and, subsequently, there was filed a suggestion of death of Victor Folks. The main question in this appeal is presented by appellant Trilck as follows:

"Did the lower court commit reversible error in allowing, over the objection of counsel for Trilck, the admission into evidence, as being binding not only upon the declarant, but also upon Trilck and the other codefendants, of four extrajudicial statements made by various of the other defendants to various members of the staff of the prosecuting attorney's office for the county of Wayne during the period of the alleged conspiracies (February 13, 1953 to February 13, 1959), but not in pursuance or furtherance of the conspiracies, but rather in derogation of same, and did the lower court commit reversible error in allowing, over the objection of counsel for Trilck, the admission into evidence, as being binding not only upon the declarant, but also upon Trilck and the other codefendants, of a certain statement made on May 7, 1954 (exhibit 15) to an assistant prosecut-

ing attorney for the county of Wayne by the defendant, Walter Wood, which statement was nothing more than an exculpatory statement in narrative form as to Wood, but which contained inculpatory matters with respect to Trilck and some of the other defendants?"

The trial court in a written opinion denying motions for a new trial agrees with defendants that to be admissible the statements must be in furtherance of the object; states that the cases defendants call to the court's attention do not define "furtherance" and points out that defendants' assignment of error "stands or falls on the real meaning of 'furtherance.'"

The court singled out an opinion of the 7th circuit court of appeals[1] and, after stating that the case is "most pertinent," quoted same as follows:

"Construing the expression in 'furtherance of the conspiracy' reference is not to the *admission* as such, but rather to the *act* concerning which the admission is made; that is to say, if the act or declaration, concerning which the admission or declaration is made, be in furtherance of the conspiracy, then it may be said that the admission is in furtherance of the conspiracy."

Evidently following the above decision, the lower court stated:

"Here then is the rule. Here is the fine point which distinguishes counsel's contention from the real intent of the law. How could it be otherwise? Were it as counsel contends, few if any statements which revealed the acts of the unlawful confederates made to a law enforcement official or to any other third person would ever be admissible, even though they were made during the life of the conspiracy.

[1] *International Indemnity Co.* v. *Lehman* (CCA 7, 1928), 28 F2d 1, 4.

If such were the construction placed by the law upon 'furtherance,' why would there be the need at all for any such rule which requires the two elements 'time' and 'furtherance'? Obviously it is not the act of declaring or the act of making the statement which must meet the test of 'furtherance,' because it is inconceivable that such act could ever be in furtherance. Rather it is the facts *which make up the content of the statement* which must meet the test of 'furtherance.' "

Pursuant to this "rule" the court held "that the statements objected to are properly admissible."

The people contend that they meet this necessary test of "furtherance" by proof which was introduced that defendants plotted and agreed among themselves as to what false statements they would make if questioned by law enforcing officials about the conspiracy, and state: "These declarations pursuant to plan thus became *acts* in furtherance of the conspiracy, and as such binding upon all defendants."

It is not unusual or strange that past court decisions have not deemed it necessary to define what was meant by the use of the word "furtherance." "Furtherance" is not a technical word, obscure in meaning, but, rather a commonplace word that is understood by the ordinary person as Webster defines it, namely: "The act of preferment: advancement, promotion."[2]

Our Court has made it clear that while hearsay is not admissible for the reason that the essential right of cross-examination is absent, yet we have recognized an exception in conspiracy cases where there is proof of a common enterprise or a mutual agency. Under those conditions the acts and declarations of one conspirator done or made while the conspiracy is pending *and in furtherance of its*

[2] Webster's Third New International Dictionary, Unabridged (1964 ed), p 924.

*object* are admissible against all conspirators. See *People* v. *Beller,* 294 Mich 464; *People* v. *Chambers,* 279 Mich 73. No decision of this Court has approved the trial court's "rule" that "it is the facts which make up the content of the statement which must meet the test of 'furtherance'", and "it is not the act of declaring or the act of making the statement which must meet the test of 'furtherance.'"

In considering the use of extrajudicial statements, the United States Supreme Court has (1) commented on the long history of judicial experience showing the "weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at a trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross-examination";[3] has (2) warned against an improper extension of "this narrow exception to the hearsay rule";[4] has (3) stated that the declaration of one conspirator will not be binding against other conspirators unless the proof discloses declarant was acting as agent of the other conspirators at the time of making the declaration and that the declaration was *made in furtherance of the conspiracy;*[5] has (4) emphasized the fact that the acts of one partner in crime is only admissible against the others where *it is in furtherance of the criminal undertaking;*[6] that (5) "continuity of action to produce the unlawful result, or as stated in *United States* v. *Kissel,* 218 US 601, 607 (31 S Ct 124, 54

[3] *Opper* v. *United States,* 348 US 84, 90 (75 S Ct 158, 99 L ed 101, 45 ALR2d 1308).

[4] *Krulewitch* v. *United States,* 336 US 440 (69 S Ct 716, 93 L ed 790).

[5] *Lutwak* v. *United States,* 344 US 604, 616–619 (73 S Ct 481, 97 L ed 593).

[6] *Pinkerton* v. *United States,* 328 US 640 (66 S Ct 1180, 90 L ed 1489).

L ed 1168), 'continuous cooperation of the conspirators to keep it up,' is necessary";[7] and (6) that a conspiracy is a partnership in crime.[8]

In the latest decision of the United States Supreme Court, *Wong Sun* v. *United States,* 371 US 471, 490 (83 S Ct 407, 9 L ed 2d 441), it was stated:

"The second governing principle, likewise well settled in our decisions, is that an out-of-court declaration made after arrest may not be used at trial against one of the declarant's partners in crime. While such a statement is 'admissible against the others where it is in furtherance of the criminal undertaking * * * all such responsibility is at an end when the conspiracy ends.' *Fiswick* v. *United States,* 329 US 211, 217 (67 S Ct 224, 91 L ed 196). We have consistently refused to broaden that very narrow exception to the traditional hearsay rule which admits statements of a codefendant made in furtherance of a conspiracy or joint undertaking. See *Krulewitch* v. *United States,* 336 US 440, 443–445 (69 S Ct 716, 93 L ed 790). And where post-conspiracy declarations have been admitted, we have carefully ascertained that limiting instructions kept the jury from considering the contents with respect to the guilt of anyone but the declarant. *Lutwak* v. *United States,* 344 US 604, 618, 619 (73 S Ct 481, 97 L ed 593); *Delli Paoli* v. *United States,* 352 US 232, 236, 237 (77 S Ct 294, 1 L ed 2d 278)."

The people's contention that defendants' plot to make false statements to law enforcement officials meets the test of "furtherance" is at variance with the United States Supreme Court decision in *Krulewitch* v. *United States,* 336 US 440, 443, 444 (69 S Ct 716, 93 L ed 790), where it was stated:

---

[7] *Fiswick* v. *United States,* 329 US 211, 216 (67 S Ct 224, 91 L ed 196).

[8] *United States* v. *Socony-Vacuum Oil Co., Inc.,* 310 US 150 (60 S Ct 811, 84 L ed 1129).

"Its (government's) argument runs this way. Conspirators about to commit crimes always expressly or implicitly agree to collaborate with each other to conceal facts in order to prevent detection, conviction and punishment. Thus the argument is that even after the central criminal objectives of a conspiracy have succeeded or failed, an implicit subsidiary phase of the conspiracy always survives, the phase which has concealment as its sole objective. * * *

"We cannot accept the government's contention. * * * The government now asks us to expand this narrow exception to the hearsay rule and hold admissible a declaration, not made in furtherance of the alleged criminal transportation conspiracy charged, but made in furtherance of an alleged implied but uncharged conspiracy aimed at preventing detection and punishment. * * * We are not persuaded to adopt the government's implict conspiracy theory which in all criminal conspiracy cases would create automatically a further breach of the general rule against the admission of hearsay evidence."

We quote from 2 Wharton's Criminal Evidence (12th ed), Co-conspirators and Accomplices, § 417, p 186:

"Hence, in some cases, when both the defendant and the actor or declarant are tried together, the evidence is admissible against one and not the other. The recognized practice in such a situation is to admit the act or declaration as against the actor or declarant, but the court must instruct the jury that such act or declaration is not admissible against the other defendant or defendants, and is not to be considered in determining their guilt. The codefendant against whom the act or declaration is not admissible receives his protection from the court's admonition, and it is reversible error for the court

to fail to instruct the jury in this respect. *But if a statement made does not tend to prove the charge against the defendant who made the statement, but tends to prove the charge against his codefendant only, the statement is objectionable as hearsay and is admissible against neither."* (Emphasis supplied.)

We have italicized the last sentence of the above quotation because it particularly applies to the statement of Walter Wood, made May 7, 1954, which the court allowed in evidence over appellants' objection, even though the Wood statement was an exculpatory statement in narrative form as to Wood, but contained inculpatory matters in respect to the other defendants.

Appellants' contention is summed up to this Court as follows:

"Were any of the five statements in question made in pursuance or in furtherance of the conspiracy, notwithstanding they admittedly were made during the life of the alleged conspiracies? To ask this question would seem to answer it. In this respect, each of these statements was made to law enforcement officials, and the lower court, therefore, in admitting those statements as being binding upon all of the defendants must have necessarily reached the conclusion, albeit the erroneous conclusion, that they were made by the declarants for the purpose of advancing the common objective of the conspiracies charged, viz. corruption of law enforcement officials in River Rouge.

"It can be rephrased perhaps:

"In admitting the statements, the court had to conclude as a matter of law that the common criminal objective, viz. corruption of law enforcement, was to be advanced by these statements, and that the declarants, by reason of their common criminal purpose, were implicitly authorized by their coconspir-

ators to make such statements; or, that the criminal agency relationship between the parties as alleged included a subsidiary agreement by which each implicitly authorized the others to make statements to law-enforcement officials implicating some of his fellow conspirators.

"So stated, it is apparent that any such statement to a law enforcement officer was repugnant to, antagonistic with, and in contravention of the very agency (conspiracy) charged. Each such statement constituted a frontal attack by the agent upon the very agency relationship which the prosecution sought to prove. These narrations to law enforcement officials, if susceptible of proof, could have only the effect of terminating the criminal agency. The people are confronted with the insurmountable obstacle of convincing that the very act which would destroy the agency is simultaneously an act in furtherance of the agency. This the people cannot do because each approach is mutually exclusive of the other. If the agent, in contravention of his obligation to his principal, acts contrary to the object of the agency, he is no longer acting as an agent, and his act is not binding upon the principal.

"An agent acting outside the scope of his authority does not bind his principal. These agents, if such they were, not only acted 'outside the scope of authority,' but did the act which could only have the effect of destroying the agency. The prosecution in effect is arguing that the partner who burns the partnership agreement does an act in furtherance of the business of the partnership, and thus, the act of burning is binding upon all of the partners.

"The very fact that the statements were offered by the prosecutor and relied upon in an attempt to prove the conspiracy belies the sophism that the statements were made for the purpose of furthering the conspiracy alleged."

We cannot accept the trial court's definition or "rule" *in re* furtherance, and agree with appellants

that the statements complained about were not made to advance the common objective and criminal purpose, namely, the corruption of law enforcement officials in River Rouge; that these statements were repugnant to and antagonistic with the charged conspiracy; that these statements, rather than being in furtherance of the conspiracy, were in derogation of same.

In the case of *Fiswick* v. *United States,* 329 US 211 (67 S Ct 224, 91 L ed 196), after holding that (p 217) "confession or admission by one co-conspirator after he has been apprehended is not in any sense a furtherance of the criminal enterprise. It is rather a frustration of it. If, as the circuit court of appeals thought, the maintenance of the plot to deceive the government was the objective of this conspiracy, the admissions made to the officers ended it," the court stated that it must reverse notwithstanding the "harmless error" statute[9] which controls Federal prosecutions because (p 218):

"We cannot say with fair assurance in this case that the jury was not substantially swayed by the use of these admissions against all petitioners. It is not enough to say that there may be a strong case made out against each petitioner. * * * Though we assume there was enough evidence to go to the jury on the existence of that conspiracy, the case was one which a prosecutor would be anxious to bolster."

Because of the error committed in admitting these statements in evidence without instructions to the jury that they were admissible only against the declarant, the judgments of conviction against appellants are reversed, the sentences imposed are vacated, and the matter remanded to the lower court

[9] Now Federal Rule of Criminal Procedure, 18 USCA, Rule No 52.— REPORTER.

for proceedings not inconsistent with this opin-
ion.

DETHMERS, BLACK, SOURIS, SMITH, and O'HARA JJ.,
concurred.

KAVANAGH, C. J., and ADAMS, J., did not sit.