PEOPLE *v.* BATTEN.
PEOPLE *v.* LAZAROS.

1. INDICTMENT AND INFORMATION—DUPLICITY.

An information is not defective for duplicity if distinct offenses are included within the single offense charged.

2. FALSE PRETENSES—INDICTMENT AND INFORMATION—DUPLICITY.

A count of an information charging obtaining money by false pretenses which alleged essentially that the defendants, with intent to defraud, did designedly and falsely represent that certain contracts were bona fide, whereas they were false and worthless, and that the victim, believing the representations, was induced to deliver money, *held,* to plead properly the elements of intent, misrepresentation, and accomplishment, as against objection that information was duplicitous because charging more than one crime in one count (CL 1948, § 750-.218).

3. INDICTMENT AND INFORMATION—AMENDMENT BEFORE TRIAL.

The court has discretion to permit amendment of an information before trial and as long as the amendment is of form, and not of substance, there is no requirement of rearraignment or further examination (CL 1948, § 767.76).

REFERENCES FOR POINTS IN HEADNOTES
[1]　27 Am Jur, Indictments and Informations § 124 *et seq.*
[2]　27 Am Jur, Indictments and Informations § 125.
[3]　27 Am Jur, Indictments and Informations §§ 117, 118.
[4]　21 Am Jur 2d, Criminal Law § 455.
[5]　27 Am Jur, Indictments and Informations § 187.
[6]　20 Am Jur 2d, Courts §§ 67, 70.
[7]　21 Am Jur 2d, Criminal Law § 450 *et seq.*
[8]　21 Am Jur 2d, Criminal Law § 288 *et seq.*
[9–11, 17]　16 Am Jur 2d, Conspiracy §§ 38–40.
[12]　53 Am Jur, Trial § 618.
[13]　31 Am Jur 2d, Expert and Opinion Evidence § 136 *et seq.*
[14]　31 Am Jur 2d, Expert and Opinion Evidence § 3.
[15, 16]　21 Am Jur 2d, Criminal Law § 343.
[18]　32 Am Jur 2d, False Pretenses § 49 *et seq.*

4. CRIMINAL LAW—AMENDMENT OF INFORMATION—REMAND FOR RE-ARRAIGNMENT.

Failure to remand defendants for further examination or to rearraign them after an amendment of information prior to trial is not prejudicial if the amendment is one of form rather than of substance.

5. INDICTMENT AND INFORMATION—APPEAL AND ERROR—WAIVER.

Objection to form of an amended information, *held*, waived, where made for the first time in reply brief on appeal, there being no request for continuance when the amendment was filed nor any objection made even as late as when the motion for new trial was made.

6. COURTS—JUDGMENTS.

Courts speak through their orders and judgments, not through their opinions.

7. CRIMINAL LAW—BINDING OVER—REMARKS OF COURT.

Order of magistrate who conducted preliminary examination of defendants charged with obtaining money by false pretenses and conspiring to obtain money by false pretenses which bound defendants over to circuit court for trial, after a recital that it appeared to the examining magistrate that the offense was committed as charged and there was probable cause to believe the defendants guilty, overrides any informal remarks made by the examining magistrate as to the complicated nature and magnitude of the case (CL 1948, §§ 750-.218, 750.505).

8. SAME—PRELIMINARY EXAMINATION—PRESENCE OF DEFENDANT.

Absence of 1 of 6 defendants charged with obtaining money by false pretenses and conspiracy to obtain money by false pretenses from preliminary examination for 1 day, after being excused by the justice of the peace conducting the preliminary examination at his own request, with his attorney remaining present, was not prejudicial to defendant, when his request to be absent was presented as a request for excuse and not a request for continuance (CL 1948, §§ 750.218, 750.505).

9. CONSPIRACY—ACTS AND DECLARATIONS OF CONSPIRATORS—ADMISSIBILITY OF EVIDENCE.

Acts and declarations of conspirators made during the period of the conspiracy in furtherance of the conspirators' purpose are admissible in evidence against all members of the conspiracy.

10. SAME—DECLARATIONS—ADMISSIBILITY AGAINST ALLEGED CONSPIRATORS—ORDER OF PROOF.

Declarations of one alleged conspirator are admissible against another not present when they were made, only if there is proof aliunde that the latter is connected with the conspiracy, but the law does not require as a matter of the order of proof that the evidence aliunde be produced first.

11. SAME—ORDER OF PROOF—CONDITIONAL ADMISSION INTO EVIDENCE.

Admission of acts and statements of some conspirators as evidence against all before proof is offered of all defendants' complicity is not ground for reversal, if the testimony is conditionally received by the court with the understanding that it will be disregarded if the conspiracy is not shown.

12. SAME—PRELIMINARY INSTRUCTION—ADMISSION OF EVIDENCE.

Discussion between defense counsel and trial court of the rule as to admissibility of statements by some conspirators against other conspirators including mention of the rule that statements made after the conclusion of the conspiracy would be admissible only against the person making them and not the other defendants had the effect of a preliminary instruction to aid the jury.

13. EVIDENCE—EXPERT TESTIMONY—VALUE OF INSTALLMENT NOTES.

Admission in evidence of opinions of officials of loan companies of the value of certain installment notes *held,* proper in trial for obtaining money by false pretenses and conspiracy to obtain money by false pretenses where part of the crime was alleged to be in the sale of worthless installment notes to a finance company (CL 1948, §§ 750.218, 750.505).

14. SAME—EXPERT TESTIMONY—ADMISSIBILITY.

The admissibility of expert testimony is within the fair discretion of the court.

15. CRIMINAL LAW—UNAVAILABILTY OF WITNESSES—CONFRONTATION—CROSS-EXAMINATION AT PRELIMINARY HEARING.

Reading witnesses' testimony at preliminary examination into the record at trial, *held,* no denial of defendants' right of confrontation, where witnesses were cross-examined by defendants' attorneys at the preliminary examination, witnesses were out of State at the time of trial, and testimony was introduced to show diligent efforts on detective's part to serve subpoenars on witnesses (CL 1948, § 768.26).

16. SAME—UNAVAILABILITY OF WITNESSES—DISCRETION OF COURT.
    Whether sufficient effort was made to secure the attendance of
    a material witness in a prosecution for crime so as to declare
    such witness unavailable is a question for determination by
    the trial judge and his ruling will not be disturbed in the
    absence of a showing of an abuse of discretion (CL 1948,
    § 768.26).

17. CONSPIRACY—EXCEPTION TO HEARSAY RULE—EVIDENCE.
    An exception to the hearsay rule is recognized in conspiracy
    cases, where there is proof of a common enterprise or a mutual
    agency, so as to permit evidence of acts and declarations of a
    conspirator done or made while the conspiracy is pending
    and in furtherance of its objects to be admitted against all
    conspirators.

18. CRIMINAL LAW—FALSE PRETENSES—CONSPIRACY—RELIANCE BY
    VICTIM.
    Evidence that money was obtained from a loan company by
    false pretenses which were relied upon by the loan company
    to its detriment, and that the obtaining was accomplished
    pursuant to a plan made to cover prior defalcations by a
    combination of persons acting in concert, where the fraudulent
    scheme and false pretenses were so designed as to bypass
    checkpoints established by the loan company in making the
    loans, *held*, sufficient to sustain verdicts of guilty as against
    contention that the loan company had checkers so that it
    would not have to rely on the information supplied to it (CL
    1948, §§ 750.218, 750.505).

Appeal from Oakland; Dardas (Leon R.), J., presiding. Submitted Division 2 April 5, 1967, at Lansing. (Docket Nos. 203, 204.) Decided December 8, 1967. Leave to appeal denied by Supreme Court to all 3 defendants February 13, 1968.

Ivan Batten, William Tees, and Peter Lazaros were convicted of obtaining money by false pretenses and conspiracy to commit that offense. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,*

Prosecuting Attorney, *Robert W. Leutheuser,* Chief Appellate Counsel, and *Dennis Donohue,* Assistant Prosecuting Attorney, for the people on appeal.

*Goldfarb & Hudnut,* for defendants on appeal.

*Nicholas Smith,* of counsel for defendants Batten and Tees.

A. C. MILLER, J.   This is a criminal case of sizable dimensions involving the charges of obtaining money by false pretenses,[1] conspiracy to commit that substantive offense,[2] and conspiracy to avoid payment of State sales taxes,[3] all of which arose out of the 3-week life of the Golden Crown Furniture Company.   Defendants Batten, Tees, Lazaros, and Beznos were engaged in a retail furniture business. Generally their procedure was to sell merchandise on credit and then resell the installment paper to finance companies.   Defendants Ronchetto and Levine were key men in the finance company.

City Furniture Company, which was owned by certain defendants, had not been able to sell some $31,000 of its installment contracts because the credit of the buyers had not been approved.   A plan was developed whereby a new corporation was formed, known as Golden Crown Furniture Company.   These bad risks, and certain additional contracts involving fictitious purchasers of merchandise, were rewritten and submitted to the General Public Loan Corporation.   Two of the defendants and conspirators, who were of managerial rank in the loan company, arranged it so that these deals

[1] CL 1948, § 750.218 (Stat Ann 1962 Rev § 28.415).

[2] CL 1948, § 750.218 (Stat Ann 1962 Rev § 28.415) and CL 1948, § 750.505 (Stat Ann 1954 Rev § 28.773).

[3] CL 1948, § 205.51 (Stat Ann 1960 Rev § 7.521) and CL 1948, § 750.505 (Stat Ann 1954 Rev § 28.773).

were approved and the moneys were paid out. Not one of 264 transactions was rejected. In substance, the conspirators submitted worthless installment contracts to General Public Loan Corporation and secured cash for them. They knew at the time that the paper was worthless and that the paper would be approved within the General Public Loan Corporation only because of the fact that 2 persons in the local branch were members of the conspiracy and would alter and secrete reports. Through this method the worthless paper was converted into cash by false and fraudulent pretenses.

At the trial, testimony was taken about high speed night rides, sessions to practice writing signatures, the frequent changing of pens to give forged signatures an appearance of authenticity, beatings, cash to customers for signatures on inflated paper; installment sales of nonexistent merchandise, payments to insiders, deletions from summary reports intended for the home office of the loan company, and a dramatic night meeting of some parties for a transaction involving a bank bag and an anticipated $30,000.

Defendant Lazaros was tried by jury, and found guilty on all counts. Defendant Ronchetto was found guilty by the jury on counts 1 and 2, and not guilty on count 3. The other defendants, Batten, Tees, Beznos, and Levine, were found guilty by the judge on counts 1 and 2. The trial judge set aside the jury verdict of guilty on count 3 as to Lazaros.

The first allegation of error asserted in defendants' brief is based on the denial of the motion to quash the information "on the ground that the first count charged two different felonies provable by different facts." This ground, recited in appellants' brief, was not presented in the original motion. As stated at page 3 of the brief of the plaintiff:

"After a search of the trial record and exhibits the people cannot discover just where or if defendants ever made any objection on the grounds of vagueness or duplicity, such as they now make before this court."

A similar search made by this Court brings the same result. In any event the claim is without merit. The amended information was in the usual form and a bill of particulars was also filed which eliminated any claim of failure to reasonably apprise of the nature of the charges. CL 1948, § 767.45 (Stat Ann 1954 Rev § 28.985). It has been held that an information is not defective for duplicity if distinct offenses are included within the offense charged. In *People* v. *Luttermoser* (1900), 122 Mich 562, 565, it was held:

"The nature of the offense makes it necessary to set out the nature of the false tokens and pretenses. The obtaining of the signatures and the presentation of the orders constituted the false pretenses to the treasurer which induced him to part with the money of the township.    *    *    *    The gist of the offense was the obtaining the money by the presentation of false or invalid orders. When this is stated, it answers the further objection that the information is bad for duplicity because in the same count several distinct, petty offenses are alleged, as these supposed distinct offenses consist of obtaining these several orders, but the averment as to obtaining the money is single."

It was necessary to allege and prove the circumstances involved in the installment paper transactions since they constituted the false pretenses by means of which the finance company was induced to part with money. The information reduced to its essentials alleged that the named parties "with intent to cheat and defraud    *    *    *    did designedly and falsely represent and pretend that certain writ-

ten retail sales installment contracts were bona fide, * * * whereas the same were false and worthless * * * and the General Public Loan Corporation * * * believing said false pretenses and representations * * * were * * * induced to deliver * * * certain moneys." Thus the elements of intent, misrepresentation of fact, and accomplishment were pleaded and, as was stated in *Luttermoser, supra,* "the averment as to obtaining money is single".

Defendants also assert error in granting permission to amend the information prior to trial. It is sufficient to state that the court has discretion to permit such amendment of pleadings, CL 1948, § 767.76 (Stat Ann 1954 Rev § 28.1016), and that so long as the amendment is as to form, which was true here, there is no requirement of rearraignment and further examination. In *People v. O'Hara* (1936), 278 Mich 281, 301, the Court ruled:

"Failure to remand defendants for further examination or to rearraign them after the amendment was in no way prejudicial. The amendment was one of form rather than substance."

No request for continuance was made when the amended information was filed, nor was error in permitting the amendment asserted even as late as the motion for new trial. The following statement is in point:

"The record does not show that any objection whatsoever was made to the amended indictment at the time of the trial or on the motion for a new trial or in the assignments of error. Its regularity is attacked for the first time in the brief for appellant in this Court. By going so far without objections, appellant waived any right he may have had to object to the amended indictment." *People v. Kennan* (1936), 275 Mich 452, 454.

See, also, *People* v. *Elmer Weatherspoon* (1967), 6 Mich App 233, 236. This assertion of error was raised for the first time in the reply brief and comes too late.

Defendants assert duplicity by reason of joining count 3, which was the charge of conspiracy to evade sales taxes. In the initial brief, defendants state:

"For the purposes of this appeal, the third count will not be considered because all defendants were acquitted on said charge."

This was not presented to the trial court and will not be considered now.

The motion to quash made before trial did assert the following grounds which are raised again by defendants' brief: that the return of the magistrate was improper and that certain testimony was taken out of the presence of defendant Lazaros. The court file indicates that the return of the magistrate as to each defendant is on the ordinary form and recites:

"It appearing to me, that the said offense was committed as charged in said annexed complaint and warrant counts 1, 2, and 3, that the same is not cognizable by a justice of the peace and that there was probable cause to believe the said defendant(s) guilty   *   *   *   ."

The courts speak through their orders. In *Michigamme Oil Co.* v. *Huron Valley Building & Savings Ass'n.* (1937), 280 Mich 12, 14, the Court said:

"We have repeatedly held that:
" 'Courts speak through their judgments and decrees, not through their opinions.' *Boyle* v. *Berg* (1928), 242 Mich 225."

See, also, *Miskinis* v. *Bement* (1949), 325 Mich 404.

The order binding defendants over to circuit court must override any informal remarks alleged by counsel's affidavit to have been made by the magistrate as to the "complicated nature and magnitude" of the case.[4]

It appears that the other point is also without merit. The defendant Lazaros requested permission to be absent for 1 day of the examination. He appeared and asked the justice to be excused because of the illness of a child. His attorney remained. This was not presented in the first instance as a request for continuance denied, but as a request for excuse granted by consent of all concerned. There was no prejudice.

The second allegation of error involves the order of proof. As stated by the defendants:

"Did the trial court err in admitting evidence of acts and declarations of coconspirators before a showing of a prima facie case of conspiracy?"

It is clear that the acts and declarations of conspirators in furtherance of their purpose are admissible against all members of the conspiracy if made during the period of the conspiracy. *People* v. *Trilck* (1965), 374 Mich 118; *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L ed 2d 441). See, also, 4 ALR3d 671. It is also clear that this conspiracy must be proven by evidence aliunde.

"However, such declarations are admissible over the objection of an alleged coconspirator, who was not present when they were made, only if there is proof aliunde that he is connected with the conspiracy. * * * Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser* v. *United States* (1941),

---

[4] The preliminary examination transcript contained 1,246 pages, and the trial transcript 3,911.

315 US 60, 74, 75 (62 S Ct 457, 467, 86 L ed 680, 701).

The law does not require as a matter of the order of proof that the evidence aliunde be produced first. The nature of the cases frequently makes this impossible. In *People* v. *Saunders* (1872), 25 Mich 119, 120, 121, the Court said:

"It often happens that the existence of the conspiracy is only made out by inference from the acts and declarations of the several parties thereto; and to exclude evidence of these until the conspiracy is established in some other way, would, in many cases, give the guilty parties immunity."

In *People* v. *Knoll* (1932), 258 Mich 89, 95, 96, the Court approved *People* v. *Saunders, supra,* and quoted from Underhill's Criminal Evidence (3d ed), pp 958–960, as follows:

" 'The safest rule is to satisfy the jury by a prima facie case that a conspiracy existed and then to offer evidence of the declarations of any conspirator. However,  *  *  *  the declarations are often received before there is any proof of a conspiracy, and then, if the conspiracy be not shown, the jury is instructed to disregard the declarations.' "

This rule was also approved in *People* v. *Pettijohn* (1938), 283 Mich 108, 115, where the Court specifically acknowledged the conditional reception of evidence as follows:

"The testimony was conditionally received by the court with the understanding that it would be stricken if defendants were not connected with it."

This was the procedure followed by Judge Dardas and he subsequently properly charged the jury as follows:

"I might say as to statements made here, *in order for you to consider* the acts and statements of any persons other than the defendants where it was not done within their presence or knowledge, you must be satisfied from the evidence beyond a reasonable doubt that a conspiracy did in fact exist and that the defendants were parties to it and that the acts and statements of others not in the presence of or within the knowledge of the defendants, *to be considered by you,* must have been done or spoken *in furtherance of the purpose of the conspiracy* and *after it was formed and before it was ended."* (Emphasis added.)

There were no requests to charge, nor were there any objections to the charge as given. Furthermore, early in the trial, defense counsel stated the rule in the presence of the jury as follows:

"*Mr. Smith:* I have an objection which again will be a forerunner, perhaps, of others on a different point. There is a conspiracy alleged in this case, Your Honor, and it is a contention of the defense that there has been no conspiracy or any unlawful act shown up to this time. However, it is the contention of the defense, particularly my defense on behalf of Peter Lazaros, that after December 9, when the defendant Gino Ronchetto was discharged from the employ of General Public Loan, and Peter Lazaros was informed that General Public Loan no longer was purchasing paper from his furniture store, that those are acts and strong evidence that even if there had been a conspiracy, and none has been shown, but even if there had been, it certainly would have terminated at that date, and any statements made by anyone other than Peter Lazaros after that date would not be binding on Peter Lazaros. Now, he is testifying to statements by Mr. Tees made after this particular time. It is my contention, Your Honor, that even if there were, using the greatest latitude and allowing for the maximum truth to the allegations, al-

though they haven't been established by proof, that even if there were that after that date, there certainly could not be a continuing conspiracy, and certainly statements of anyone after that date would be self-serving to the individual making it, and should not be binding on the defendant Lazaros."

The trial court immediately responded:

"That is a correct statement that if a conspiracy did exist, that after the conclusion of the conspiracy, statements made by anyone would be binding only on them."

This had the effect of a preliminary instruction to aid the jury in the course of the very long trial.

The first statements attributed to defendant Ronchetto came into evidence without objection. These were in the initial testimony of witness Kenneth Carr of General Public Loan Corporation and tended to connect defendant Lazaros. The other statements mentioned in defendants' brief, such as Ronchetto's "desire to see a priest", also came in initially without objection. Certainly the statements and actions were admissible against Ronchetto and the court carefully covered the subject matter in the final charge to the jury as above noted. These were statements made the night of the discovery of the irregularities, and the tenor of the statements was such that the jury could well draw the inference that the efforts to raise the money to cover the deficits prior to calling in authorities were during and in furtherance of the conspiracy. There was evidence that defendant Tees obtained money for Golden Crown paper after that night.

The situation that existed in *People* v. *Trilck* (1965), 374 Mich 118, was not involved at this point. That case involved statements made to authorities

after the termination of the conspiracy by arrest. Here the statements were made to prevent the termination of the conspiracy. The statements of other defendants which were admitted into evidence were used only against the defendants making them. Jury trial was waived as to all defendants who had made such statements.

The trial judge properly ruled:

"Anything after [arrest] is only to be used against the person making it."

At the conclusion of the trial the court again ruled, referring to the written statements of defendants Levine, Tees, Beznos, Batten, and Lazaros:

"At the time I received these extrajudicial statements, the ruling was and still holds that it applies only to the person making the statement."

Even the marking of these exhibits was performed out of the presence of the jury as requested by attorneys for defense. There was no error.

Error was assigned because of the receipt in evidence of certain loan company officials' opinions of the value of certain installment notes. These persons had special experience and the court properly permitted them to give the jury the benefit of that experience through opinion testimony. Justice COOLEY wrote in *McEwen* v. *Bigelow* (1879), 40 Mich 215, 217:

"The court must exercise a judicial discretion regarding the reception of evidence purporting to be that of experts.   *   *   *   He must decide within the limits of a fair discretion whether the experience of the supposed expert had been such as to make his opinions of any value."

See, also, *People* v. *McQuaid* (1891), 85 Mich 123; and *Perri* v. *Tassie* (1940), 293 Mich 464.

Preliminary examination testimony of Connie Wood and Victor Postic was read at the trial. These witnesses had been cross-examined at the preliminary examination by attorneys for defendants. Both witnesses were out of the State; one was in military service. Preliminary testimony of the detective in charge of the case was taken to show the diligent efforts to serve subpoenaes issued for trial. The statute permits this procedure. CL 1948, § 768.26 (Stat Ann 1954 Rev § 28.1049). Nevertheless the use of such testimony should be scrutinized in the light of the Federal confrontation principles enunciated in *Pointer* v. *Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L ed 2d 923). The United States Supreme Court reversed the conviction in that case because the transcript of testimony was read at the trial. The chief witness had left the State after testifying at a preliminary hearing. Defendants had not been represented by counsel at that hearing. The Court said (p 407):

"The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine."

Mr. Justice Potter Stewart notes in concurring (p 409):

"I join in the judgment reversing this conviction, for the reason that this petitioner was denied the opportunity to cross-examine, through counsel, the chief witness for the prosecution."

A case which is strikingly similar to the one at bar is *People* v. *Veitenheimer* (1924), 229 Mich 409, 411, 412, where the Court held:

"In the showing made by the prosecuting attorney as to his diligence in securing the attendance of

Gilson at this trial, it appeared that the witness had enlisted in the army and was not in the State. Under the showing made it was not error to permit the stenographer to read into the record the testimony of the witness taken on the examination."

See, also, *People* v. *Pickett* (1954), 339 Mich 294, where the witness refused to testify at trial on ground of privilege against self-incrimination, and *People* v. *Dusterwinkle* (1966), 3 Mich App 150, where the witness was in military service. In the latter case, Judge McGREGOR, writing for the Court, said (p 153):

"Sufficient effort to secure the attendance of a material witness is a question for determination by the trial judge, and there is no showing of judicial abuse of discretion under the circumstances in the instant matter."

The witness Connie Wood was a social acquaintance of defendant Tees and in addition to other efforts the officer had solicited this defendant's aid in locating her for trial. Mr. Tees only stated that he knew that she was in California. A complete and adequate opportunity to cross-examine was afforded at the preliminary examination. The record shows the opportunity was exercised by both extensive cross-examination and objections. Reasonable grounds for the failure to produce at trial were shown. There was no denial of rights. The right of confrontation afforded under both Federal and Michigan Constitutions was satisfied.[5]

Even though no requests to charge were filed and no objections were made at the conclusion of the charge, the defendants now claim that the charge on conspiracy was defective because:

---

[5] US Const, Ams 6, 14; Mich Const 1908, art 2, § 19.

"In no instance, during the course of instructions, did the court reflect upon the effect of such acts or declarations made after the alleged conspiracy was at an end."

The argument is specious. The judge did instruct the jury as to the effect. He said repeatedly: "In order for you to consider * * * ". Defendants assert that the rule stated in *People* v. *Trilck, supra,* was violated. In that case the Court said (pp 122, 123):

"We have recognized an exception in conspiracy cases where there is proof of a common enterprise or a mutual agency. Under those conditions the acts and declarations of one conspirator done or made while the conspiracy is pending *and in furtherance of its object* are admissible against all conspirators."

The trial court's charge covers the elements of time and purpose as well as the effect of admissions after arrest. This entire charge was repeated at the request of the jury. Furthermore, as also noted above, the judge had stated the rule to the jury during the course of the trial so that the jurors had the benefit of it while they were hearing the evidence as well as in the final charge. There was no error.

Finally, defendants contend that the verdicts were against the great weight of the evidence and that motions for verdicts of not guilty or new trial should have been granted. Defendants do not attempt to document the argument other than to assert that General Public Loan Corporation had checkers "so that they would not have to rely on the information supplied them". Where the fraudulent scheme and false pretenses were so designed as to bypass these checkpoints, as was the case here, the ineffective protective measures cannot be taken advantage of by defendants. There was

ample evidence to sustain the verdicts of guilty beyond a reasonable doubt. Money was obtained by false pretenses which were relied upon by the loan company to its detriment, and the obtaining was accomplished pursuant to a plan made to cover prior defalcations by a combination of persons acting in concert. There was no miscarriage of justice.

Judgment of conviction is affirmed and bonds are cancelled. Defendants are ordered to begin serving the sentences imposed.

QUINN, P. J., and McGREGOR, J., concurred.