PEOPLE v SHEPHERD

1. CRIMINAL LAW—SENTENCING—AIDERS AND ABETTORS—CRUEL AND UNUSUAL PUNISHMENT—CRIMINAL RECORD—PRINCIPALS.

It is not cruel and unusual punishment to sentence one convicted of aiding and abetting the larceny of 54 phonograph records from a building to a term of two to four years where considering his extensive criminal record the sentence is within the bounds of reason; a defendant convicted of aiding and abetting may be sentenced to the same term as the principal.

2. LARCENY—PROSECUTOR'S DISCRETION—CHARGES—FELONIES—MISDEMEANORS—ABUSE OF DISCRETION—EVIDENCE.

A prosecutor does not abuse his broad discretion to name the charges which will be brought against a criminal defendant by bringing a charge of larceny in a building rather than simple larceny where there is evidence to support the felony charge.

3. CRIMINAL LAW—CODEFENDANTS—DISAPPEARANCE—INSTRUCTIONS TO JURY—REQUEST—OBJECTION.

A trial judge has no duty to *sua sponte* instruct a jury that it must disregard the disappearance during trial of one of several codefendants when passing on the guilt or innocence of the remaining defendants; a judge is not required to give limiting or cautionary instructions absent a request or a proper objection.

4. CRIMINAL LAW—TRIAL—FAILURE TO APPEAR—PRESUMPTION OF PREJUDICE—CODEFENDANTS.

Injury is conclusively presumed where a defendant disappears

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 130.
[2] 63 Am Jur 2d, Prosecuting Attorneys § 26.
  Duty and discretion of district or prosecuting attorney as regards prosecution for criminal offenses. 155 ALR 10.
[3, 4, 6] 75 Am Jur 2d, Trial §§ 51, 786.
[5] 75 Am Jur 2d, Trial §§ 594, 616, 924.
[7] 5 Am Jur 2d, Appeal and Error § 545.
  75 Am Jur 2d, Trial § 166.
[8] 21 Am Jur 2d, Criminal Law § 333 *et seq.*

during his trial and is tried in his absence, but this presumption of prejudice does not extend to codefendants who are present at the trial.

5. TRIAL—INSTRUCTIONS TO JURY—EXAMPLES—INSTRUCTIONS AS A WHOLE.

A trial judge must clearly indicate to a jury that examples, where used in jury instructions to clarify the meaning of complex legal terms, are only examples, and that the jury must determine guilt or innocence by following the jury instructions as a whole.

6. CRIMINAL LAW—EVIDENCE—ADMISSIONS—CODEFENDANTS—CONCERT OF ACTION—COMMON SCHEME—CONSPIRACY.

Admissions and statements made by a defendant are admissible in evidence against his codefendants where the defendants acted in concert and the statements were made while the common scheme or plan was still in effect, regardless of whether a conspiracy is charged.

7. EVIDENCE—HEARSAY—ADMISSIBILITY—PRESERVING QUESTION— MANIFEST INJUSTICE.

Failure of a defendant to object at trial to the erroneous admission of hearsay testimony will bar him from bringing the claim on appeal unless manifest injustice can be shown.

8. CONSTITUTIONAL LAW—CRIMINAL LAW—CONFRONTATION OF WITNESSES—NONTESTIFYING CODEFENDANTS—HEARSAY—EXCEPTIONS —CONSPIRATORS.

A defendant is not denied the right to confront the witnesses against him by the admission of an out-of-court statement of a nontestifying codefendant where the statement is properly admitted under the coconspirator exception to the hearsay rule.

Appeal from Macomb, Alton H. Noe, J. Submitted May 12, 1975, at Lansing. (Docket No. 21123.) Decided August 13, 1975.

Larry Shepherd was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Ap-

pellate Lawyer, and *Stephen J. Osinski,* Assistant Prosecuting Attorney, for the people.

*William M. Havey,* for defendant on appeal.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

BRONSON, J. Defendant, Larry Shepherd, was found guilty by a jury of the crime of larceny in a building, contrary to MCLA 750.360; MSA 28.592. The trial judge sentenced defendant to a term of from two to four years in prison, and defendant appeals as of right.

The primary prosecution witness in the case was Robert Maley, a security guard at the Montgomery Ward's store in Warren. He testified that he was watching for shoplifters on the day in question when his attention was drawn to a person carrying an easily-opened large cardboard box. That person was later identified as Henry Witcher, and he was accompanied by the defendant. Maley continued to observe these two, when he saw defendant go into the record department and begin placing records from various bins into one section. Defendant then went up to the cashier to buy one record, while Henry Witcher simultaneously moved over to the bin and put those records in the box. Witcher and the defendant then exited together.

The security guard Maley stopped the two defendants outside the store, and asked Witcher if he had purchased the records. He replied that he had not. While this was going on, defendant was slowly slipping around out of sight. Both defendants then suddenly started running off. After momentarily losing Maley, they returned to the Ward's parking lot, where a third codefendant was waiting in their car. Maley flagged down several Ward's employees,

and sent them after the car. Those employees caught up with the car, and talked Witcher into returning to the store with them. Defendant and the third codefendant were told to drive the getaway car behind the employees' car and follow them back to the store. Before they reached the store, defendant and his partner stopped following the car containing Witcher and the employees in an attempt to escape. They were later picked up by the police.

Defendant contends that his sentence constitutes cruel and unusual punishment because (1) the value of the goods taken from the store, 54 phonograph records, was small and (2) defendant did not actually take the records, but was merely convicted under the aiding and abetting statute. We cannot agree.

This Court has previously upheld similar sentences for larceny convictions involving the taking of property without great value. See *People v Jackson,* 29 Mich App 654; 185 NW2d 608 (1971) [two to four years for the theft of a $55.95 jacket], *People v Bullock,* 48 Mich App 700; 211 NW2d 108 (1973) [3-1/2 to 4 years for the theft of four sirloin steaks worth $11], and *People v Bohm,* 49 Mich App 244; 212 NW2d 61 (1973) [two to four years for the theft of a purse containing $10]. In addition, this Court has rejected the view, in the context of the felony-murder statute, that it constitutes cruel and unusual punishment to sentence one convicted of aiding and abetting to the same term as the principal, *People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974), *People v Bills,* 53 Mich App 339; 220 NW2d 101 (1974). Overall, the trial judge properly considered the defendant's extensive criminal record in imposing a sentence within the bounds of reason.

Defendant indirectly attacks his sentence by arguing that the prosecuting attorney abused his discretion by charging him with larceny from a building. It is claimed that the prosecutor was required to charge defendant with simple larceny, contrary to MCLA 750.356; MSA 28.588. That argument was directly rejected in *People v Jackson, supra,* where this Court held that the prosecutor did not abuse his broad discretion by charging defendant with larceny in a building when evidence existed to support that charge. No error occurred here in this regard.

After appearing in court for the first day of trial, one of the three codefendants, Henry Witcher, failed to show up for the rest of the trial. Defendant contends that the trial judge was required to *sua sponte* instruct the jury to disregard the disappearance of that codefendant when passing on the guilt or innocence of the remaining defendants. We hold that the trial judge has no such duty.

Defendant attempts to analogize two cases imposing a requirement of a cautionary instruction to the jury after a codefendant has pled guilty to the charges during trial. See, for example, *United States v Soares,* 456 F2d 431 (CA 10, 1972), *United States v Earley,* 482 F2d 53 (CA 10, 1973), *cert den* 414 US 1111; 94 S Ct 841; 38 L Ed 2d 738 (1973). However, even that rule is subject to the requirement of a request for such an instruction, *Richards v United States,* 193 F2d 554 (CA 10, 1951), *cert den (Krupnick v United States)* 343 US 930; 72 S Ct 764; 96 L Ed 1340 (1952), *Jiron v United States,* 306 F2d 946 (CA 10, 1962). Further, even if this Court would hold that a *sua sponte* instruction is required for the above situation, an important difference is present here. The jury is much

more likely to infer the codefendant's own guilt from his guilty plea than from his flight from the trial. Consequently, the possibility of a jury inference as to the *other* defendants' guilt from the absence of a codefendant is also more remote. For those reasons, we cannot hold that the guilty plea rule alone mandates a similar result here. General principles of law must control.

The general rule in this area is that the trial judge is not required to give limiting or cautionary instructions absent a request or a proper objection, *People v Streetman,* 59 Mich App 49; 228 NW2d 539 (1975), *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973). While prejudice to the absent defendant himself is presumed, *People v Ewing,* 48 Mich App 657; 211 NW2d 56 (1973), *People v Swan,* 59 Mich App 409; 229 NW2d 476 (1975), no such rule exists as to the codefendants remaining for trial. We see no reason to depart from the requirements of the general rule. Since defendant did not request the cautionary instruction which he now contends should have been given, nor object to the instructions as given, the trial judge did not err by not giving that instruction.

The trial judge in his final instructions attempted to explain the aiding and abetting statute through the use of an example. He stated that the statute makes the lookout remaining in the getaway car during an armed robbery equally as guilty as his partners who actually entered the premises carrying weapons. Defendant claims that the jury was thereby misled into believing the defendant was carrying a weapon at the time of the theft. We must disagree.

It is certainly true that the use of examples in jury instructions serves to clarify the meaning of complex legal terms. On the other hand, the preci-

sion involved in the use of the proper legal terminology is lost to some degree. In addition, the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example. To prevent these adverse effects, the trial judge must clearly indicate that the examples are *only* examples, and that the jury must determine guilt or innocence by following the jury instructions as a whole, *People v Murphy,* 28 Mich App 150; 184 NW2d 256 (1970), *People v Roberson,* 44 Mich App 105; 205 NW2d 50 (1972). We find that the trial judge here followed that admonition in giving his instruction, and committed no error.

During the trial, several prosecution witnesses testified as to some out-of-court statements made by one of the codefendants in the case, Henry Witcher. Witcher never took the stand at trial, being the codefendant who disappeared the second day of trial. Defendant contends that such testimony was hearsay, and its introduction reversible error.

It is well settled that admissions and statements of a codefendant are admissible against another defendant if there exists a concert of action between the defendants, and the statements are made while the common scheme or plan is still in effect, *People v Trilck,* 374 Mich 118; 132 NW2d 134 (1965), *People v Adams,* 48 Mich App 595; 210 NW2d 888 (1973). The defendants need not actually be charged with conspiracy, as long as there is independent evidence of the required concert of action, *People v Stewart,* 46 Mich App 282; 207 NW2d 907 (1973). We have no trouble in finding a concert of action between the defendant and Witcher in committing the larceny of the records. The real question is whether the scheme had ended at the time of the statements.

The first statement by Witcher was an admission that he had not purchased the merchandise when he and defendant were stopped outside the store by a security guard. However, it is clear from the evidence that Witcher talked to that security guard to distract him before both defendants suddenly fled. This statement was made to prevent the termination of the joint scheme, and therefore was made while the scheme was still in effect, *People v Batten*, 9 Mich App 195; 156 NW2d 640 (1967), *rev'd on other grounds* 386 Mich 483; 192 NW2d 241 (1971). A second statement by Witcher, questioning why he should return with other store employees who eventually caught him, must also be held to have been made while the scheme was in effect by similar reasoning. Since these two statements come within an exception to the hearsay rule, their introduction into evidence was not error.[1]

The store security guard also testified as to Witcher's silence in the face of a question as to his motives for taking the records. The coconspirator hearsay exception is clearly inapplicable, as the statement was made after he was retained at the store after his capture, *People v Stewart*, 46 Mich App 282; 207 NW2d 907 (1973). However, even if this silence can be considered to be a "statement", we find no error here. Defendant did not object to the testimony at trial, requiring him to now show "manifest injustice" resulting from its introduc-

---

[1] Although defendant does not raise this issue, it is worth noting that his right to confront the witnesses against him is not violated because of the absence of Witcher from the trial. The United States Supreme Court in *Dutton v Evans*, 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970), ruled that the right to confrontation was not involved where a codefendant's statement was introduced at trial under the coconspirator exception to the hearsay rule. That ruling was directly applied to the Michigan coconspirator exception in *People v Adams*, 48 Mich App 595; 210 NW2d 888 (1973).

tion, *People v Tooks,* 55 Mich App 537; 223 NW2d 63 (1974). The prosecutor in the case did not once argue that Witcher's silence was any sort of "tacit admission". Further, this statement was quickly passed over during the security guard's testimony. We find no manifest injustice, and, hence, no error in this regard.

Defendant raises several other errors on appeal, but we feel that these issues do not merit discussion.

Affirmed.